THE STATE, EX-REL. SLABY, ET AL., *v.* SUMMIT COUNTY COUNCIL ET AL.

(Nos. 11059, 11071, 11072, and 11073—Decided June 14, 1983.)

*Mr. Lynn C. Slaby,* prosecuting attorney, *Mr. James L. Bickett, Ms. Judith A. Bandy* and *Mr. Michael J. Spetrino,* for relators.

*Mr. John E. Holcomb,* for respondents.

*Per Curiam.* These cases, which have been consolidated for the purpose of argument and disposition, are actions in mandamus brought by the judges of the court of common pleas and the prosecuting attorney. The relators seek orders compelling the Summit County Council ("County Council") to appropriate funds reasonable and necessary for their respective operations. For the reasons set forth herein, we grant each writ.

The matters have been submitted to us on agreed stipulations of facts. Thus, the questions presented are ones of law and not disputes of fact.

Before discussing the issues raised, it is just as important to note what is not involved.

It is not disputed that the amounts requested by the relators are reasonable and necessary for the operation of their individual offices. There is no claim or proof that the relators abused their discretion in making their requests.

It is not disputed that unappropriated funds were available to fulfill relators' reasonable needs at the time these actions were filed.

Although the funding of other county departments would be affected if relators' needs were fully met, we are not called upon in these actions to weigh the impact upon other county functions. That ques-

tion, which lies primarily within the legislative domain, is not before us.

Although it has been suggested that the subject litigation and its anticipated result is being used as a precursor to revenue enhancement legislation, our plain duty is to answer the legal questions presented. The political questions lie elsewhere.

The basic issue before us can be put quite simply. Does the County Council have a clear legal duty to appropriate requested funds which are reasonable and necessary for the operation of the courts and prosecuting attorney so long as the request is not an abuse of discretion? The Ohio Supreme Court has repeatedly answered this question in the affirmative.

## I. General Facts

In case No. 11059, relator, Lynn Slaby, is the Prosecuting Attorney of Summit County. In case No. 11071, relators, Glen B. Morgan, John W. Reece, Frank J. Bayer, Donald B. McFadden, James E. Murphy, Theodore R. Price, and Evan J. Reed, are the judges of the General Division of the Court of Common Pleas of Summit County. In case No. 11072, relator, William P. Kannel, is the judge of the Juvenile Division of the Court of Common Pleas of Summit County. In case No. 11073, relator, W. F. Spicer, is the judge of the Probate Division of the Court of Common Pleas of Summit County.

Respondent, Summit County Council ("respondent" herein), consists of individual respondents Raymond L. Burgess, Ted E. Cole, Frank J. Gaffney, Robert M. Gippin, Joseph R. Lentini, Gerry Ceravolo, and Arthur E. Swanson.[1]

On January 3, 1983, on the application of the prosecuting attorney, the court of common pleas entered an order pursuant to R.C. 309.06 and 309.07 fixing aggregate 1983 compensation levels for the prosecuting attorney's staff. This order sets the sum of $785,000 for staff in the general division (civil, criminal, appellate, and juvenile), including $36,000 for secret service officers, and the sum of $553,460 for staff in the bureau of support.[2] A copy of this order was served on the county executive and the respondent.

On February 8, 1983, the county executive transmitted his proposed 1983 general fund budget to the respondent. Copies of this proposal were also submitted to the relators. This proposal, subsequently introduced on February 22, 1983, did not address the 1982 transfer of $600,000 from the Permanent Improvement Fund to the General Fund, or the 1982 deficit of $710,000 in the Public Assistance Fund. The county executive's budget proposal allocated the same total sum now sought by the general and juvenile divisions, but less than the sum sought by the probate division and the prosecuting attorney.

Respondent's Finance Committee held hearings on the 1983 budget where the relators or their representatives were made aware that respondent could and probably would repay the Public Assistance and Permanent Improvement Funds in 1983, and that relators' budgets could be reduced from the county executive's proposal.

On February 22, 1983, the prosecuting attorney filed his original complaint, essentially seeking enforcement of the January 3, 1983 order of the court of common pleas.

---

[1] County Executive John R. Morgan was originally a respondent in each case, but was dismissed with the stipulation, *inter alia,* that:

"* * * if appropriation of funds is directed by writ or order * * * legislation adopted in conformity with such writ or order shall, upon presentation to the County Executive, be approved by signature. * * *"

[2] The prosecuting attorney operates the bureau of support pursuant to R.C. 2301.34 to 2301.41.

On March 1, 1983, a special Finance Committee meeting was held. It was decided that the county executive's proposed budget should be reduced by $1,310,000 in order to cover the Public Assistance Fund deficit and to repay the Permanent Improvement Fund. This required an average reduction of 19.2 percent in the budget requests of all office holders, including the relators, to achieve a balanced budget.

On March 3, 1983, the probate court judge ordered the county executive and respondent to appropriate and fund the sum of $658,640 for the probate court's 1983 operating budget, as specified in individual line accounts. The relator found that sum to be reasonable, necessary and minimal for the administrative operation of the probate court. A copy of this order was served on the county executive and respondent.

On March 4, 1983, the juvenile court judge ordered the county executive and respondent to encumber and appropriate the sum of $1,417,519 for the 1983 operating budget of the juvenile court, and the sum of $765,374 for the detention center, for a total appropriation of $2,182,893 as specified in individual line accounts. The relator found that sum to be reasonable and necessary to properly operate and maintain the juvenile court. This order also recites that the relator was voluntarily reducing his budget from the original request of $2,455,936 a sum also stated to be reasonable and necessary.

Also on March 4, 1983, the general division judges ordered the county executive and respondent to encumber and appropriate the sum of $1,653,035 as the 1983 operating budget of the general division, common pleas court, the sum of $429,500 for the adult probation department, and the sum of $97,480 for the psycho-diagnostic clinic, for a total appropriation of $2,180,015 as specified in individual line accounts. The relators found that sum to be reasonable and necessary to properly operate and maintain the general division, common pleas court, and that the sum ordered represented a voluntary reduction from the original request of $2,335,000, a sum which was also reasonable and necessary.

Copies of both orders were served on the county executive and respondent.

On March 7, 1983, the relators-judges filed their original complaints, each essentially seeking enforcement of his respective order.

Also on March 7, 1983, the respondent voted unanimously to adopt Res. No. 83-101 as the 1983 general fund budget. Res. No. 83-101 was vetoed by the county executive on March 17. On March 21, 1983, respondent voted unanimously to override the veto, and the resolution then took effect.

Res. No. 83-101 allocates the following sums:

Prosecuting Attorney — $33,250 for salary for the secret service agent; $566,337 for salaries for staff in the general division; and $385,292 for salaries for staff in the bureau of support.

General Division, Court of Common Pleas — $1,415,616 for court operations; $379,987 for the adult probation department; and $75,314 [sic] for the psycho-diagnostic clinic, for a total appropriation of $1,870,017.

Juvenile Division, Court of Common Pleas — $1,258,982 for court operations; $720,618 for the detention center, for a total appropriation of $1,979,600.

Probate Division, Court of Common Pleas — $541,495 for court operations.

On March 23, 1983, amended complaints were filed by all relators, seeking enforcement of the various orders. The respondent answered each complaint, denying (1) that relators had the authority to order the sums, (2) that the sums ordered are reasonable and necessary, (3) that it has a clear legal duty to appropriate the sums ordered, and (4) that the relators have no adequate remedy at law.

Each party briefed the law and oral arguments were heard on May 26, 1983.

## II. Facts — Case No. 11059
### (Prosecuting Attorney)

All members of the prosecuting attorney's staff are either assistant prosecutors, stenographers, clerks, and/or secret service officers, and have been duly sworn by a judge of the court of common pleas.

The present appropriation for the salary accounts, including the bureau of support, would be depleted prior to the end of the 1983 calendar year. If no layoffs were made, relator's office would be required to close on or before October 14, 1983. In 1979, the salary accounts were supplemented by federal L.E.A.A. funds of $123,491.12 and by $68,327.34 in 1980, but no such funds were available thereafter.

The testimony of the prosecuting attorney is that the sum appropriated for the salary accounts of the general division, including secret service, would require the layoff of sixteen individuals if the layoffs were to take effect on June 13, 1983, and that this reduction would impair the prosecution of criminal cases, impair the representation of the county, townships and school boards, and would interfere with relator's compliance with his statutory duties under state law. He would also testify that the amount appropriated for the bureau of support salary account would necessitate the layoff of about twelve individuals if initiated by June 13, 1983. Further this would impair the prosecution and handling of welfare fraud, paternity, criminal non-support, uniform reciprocal enforcement of support act, and domestic relations cases, and would interfere with relator's office.

His testimony is also that the staff positions in the office are the minimum number for a reasonable and efficient operation of the office, and that the compensation ranges for the positions are reasonable.

## III. Facts — Case No. 11071
### (General Division)

The stipulated evidence is that the present appropriation would result in the salary accounts being depleted prior to the end of calendar year 1983, and if no employees were laid off, all operations would close on or before July 1, 1983.

The testimony of the general division judges is that the present appropriation would require the layoff of about forty-one individuals if the layoffs were to take effect on or before June 13, 1983, and that such layoffs would impair the operations of the court, including adult probation, court reporting, court secretaries, and civil and criminal assignment departments. The relators would also testify that the court's staff positions are the minimum number for the reasonable and efficient operation of the court, and that the compensation ranges are reasonable.

The relators would also testify that the aggregate sums set forth in the order of March 4, 1983, are both reasonable and necessary in order for the relators to discharge their duties under law.

If the relators had initiated layoffs of certain employees on or before March 7, 1983, fewer than forty-one employees would have been laid off. The clerk of council would testify that in prior years certain liabilities of the general division have been deferred to the next year to prevent depletion of various accounts.

## IV. Facts — Case No. 11072
### (Juvenile Division)

The testimony of the juvenile division judge is that under the present appropriation, all operations would cease by November 1, 1983, if no layoffs were to occur. The relator would also say that the compensation ranges for the staff are reasonable, and that the aggregate sums set forth in the order of March 4, 1983 are both reasonable and necessary in order for him to discharge his duties under law.

One of the juvenile division's salary accounts funded sixty-four positions as of

March 11, 1983, and relator would testify that this is the essential number and kind needed to efficiently operate that portion of the court. The relator would also testify that the present appropriation would result in the elimination of nineteen positions, resulting in cessation of family counseling services and rendering the court incapable of providing appropriate treatment and adequate supervision of delinquent youth of the county.

Another of the juvenile division's salary accounts funded five positions as of March 11, 1983, and relator would testify that these positions are the minimum and essential positions required. The current appropriation would result in the elimination of one and one-half positions, and relator would testify that this would result in the inability of the court to efficiently and timely process dependency, neglect, abuse, delinquency, non-support, and juvenile traffic offender cases.

The salary account of the juvenile division's detention center funded forty-two positions as of March 11, 1983. The relator would testify that these positions are the minimum and necessary positions required in the detention center. The current appropriation would result in the elimination of eighteen positions. The relator would testify that this reduction would result in the court's inability to provide a safe, secure and healthful detention center.

### V. Facts — Case No. 11073
### (Probate Division)

The stipulated evidence is that the current appropriation would result in the depletion of the court's salary accounts prior to the end of calendar year 1983, and without layoffs, all operations would cease on or before November 2, 1983.

The testimony of the probate division judge is that the present appropriation would require the layoff of about ten individuals if the layoffs took effect on June 13, 1983. The relator would testify that these layoffs would impair the court, including the ability to probate estates, pro-tect the interests of incompetents or wards of the court, maintain accountings of guardianships, investigate mental illness and guardianship cases, and hear adoptions and civil commitments, and would interfere with the court's compliance with statutory duties under state law.

The relator would also testify that the staff positions are the minimum number for the reasonable and efficient operation of the court, and that the compensation ranges are reasonable. The relator would also testify that the aggregate sums set forth in the order of March 3, 1983 are both reasonable and necessary in order for the relator to discharge his duties under law.

If the relator had initiated the layoff of certain employees on or before March 7, 1983, fewer layoffs would have occurred. In 1982, the probate division collected fees in the amount of $365,858.23. The relator's order of March 3, 1983, orders the amount of $487,600 for the employees' salary account. Res. No. 83-101 allocates $390,555 for this account.

### VI. Discussion — Mandamus

R.C. 2731.01 states:

"Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

The well-settled rule is stated in *State, ex rel. Consolidated Rail Corp.*, v. *Gorman* (1982), 70 Ohio St. 2d 274, 275 [24 O.O.3d 362]:

"A writ of mandamus may issue only where the relator shows (1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. * * *"

The burden is on the relator to show by plain, clear, and convincing evidence that the writ should issue. *State, ex rel.*

*Henslee,* v. *Newman* (1972), 30 Ohio St. 2d 324 [59 O.O.2d 386].

Each relator prays that a writ issue, ordering the respondent to appropriate funds in accordance with the respective orders of January 3, March 3, and March 4, 1983. We find each relator is without a plain and adequate remedy in the ordinary course of the law. Thus, it remains for relators to demonstrate a clear legal right to the sums as set forth in the orders, and a clear legal duty for respondent to appropriate those sums.

### VII. Discussion — Statutory Interpretation

The leading cases involving court funding were mandamus actions brought by juvenile or probate court judges to order the county commissioners to appropriate funds for those courts. The rule developed that under the statutes (R.C. 2101.11 and 2151.10) it was the duty of the county commissioners to annually appropriate for the court the sum of money determined by the judge to be reasonable and necessary for the proper administration of the court. When the county commissioners refused to appropriate the sum fixed by the judge, the writ would issue ordering the appropriation. This was so unless the county commissioners could show that the judge had abused his discretion in fixing the sum of money demanded. *State, ex rel. Milligan,* v. *Freeman* (1972), 31 Ohio St. 2d 13 [60 O.O.2d 7]. Whether there was an abuse of discretion depended upon "* * * a consideration of the request in relation to the factual needs of the court for the proper administration of its business. * * *" *State, ex rel. Moorehead,* v. *Reed* (1964), 177 Ohio St. 4, 5 [28 O.O.2d 409].

### VIII. Discussion — Inherent Powers

The Supreme Court has long recognized the principle that courts created by the Constitution have the inherent authority to perform certain acts or functions, necessary to safeguard and retain their very identity as courts. This inherent authority is discussed in *Hale* v. *State* (1896), 55 Ohio St. 210, 213:

"The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon the legislative will. The power to maintain order, to secure the attendance of witnesses to the end that the rights of parties may be ascertained, and to enforce process to the end that effect may be given to judgments, must inhere in every court or the purpose of its creation fails. Without such power no other could be exercised. * * *"

In the case of *In re Obstruction of Summit County Driveway* (1959), 108 Ohio App. 338 [9 O.O.2d 298], this court stated in the first paragraph of the syllabus:

"When the Constitution of Ohio vested judicial power in the courts, the inherent powers theretofore existing in the courts, to preserve and protect their own existence and to do all things reasonably necessary for the administration of justice within the scope of their jurisdiction, were impliedly retained, as inherent and necessary for the exercise of judicial functions."

In a line of cases, the Supreme Court of Ohio has developed a connection between the inherent authority of courts and the courts' ability to secure sufficient operating funds.

In *Zangerle* v. *Court of Common Pleas* (1943), 141 Ohio St. 70 [25 O.O. 199], the Supreme Court refused to issue a writ of prohibition to prevent the court of common pleas from evicting the county

auditor from the courthouse. The court of common pleas required the space in order to make room for the domestic relations court. The second paragraph of the syllabus in *Zangerle, supra,* states:

"Courts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government."

In *State, ex rel. Giuliani,* v. *Perk* (1968), 14 Ohio St. 2d 235 [43 O.O.2d 366], the Supreme Court allowed a writ of mandamus ordering several county officers to pay attorneys assigned to represent indigents the fees set by the court of appeals. While statutory authority was cited, the court also stated:

"This court has often said that a legislative body has a duty to provide for the needs of constitutional courts, as determined by those courts, which needs may exceed, but may not be limited by, legislative provision therefor. The leading case is *Zangerle* v. *Court of Common Pleas of Cuyahoga County,* 141 Ohio St. 70 [25 O.O. 199]. In view of those cases, respondents' contention that Section 5705.28, Revised Code, requires the Court of Appeals to submit a budget estimate as an absolute prerequisite to an appropriation by the board for these duly fixed and certified fees is completely without merit. The public interest is served when courts co-operate with executive and legislative bodies in the complicated budgetary processes of government. However, such voluntary co-operation should not be mistaken for a surrender or diminution of the plenary power to administer justice which is inherent in every court whose jurisdiction derives from the Ohio Constitution." *Id.* at 237.

In *State, ex rel. Foster,* v. *Bd. of County Commrs.* (1968), 16 Ohio St. 2d 89

[45 O.O.2d 442], a writ of mandamus was allowed ordering the county commissioners to appropriate funds for the juvenile court at the level set by the judge. While the statute, R.C. 2151.10, was cited, the court also stated at page 92 that:

"It is a well-established principle that the administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers. The proper administration of justice requires that the judiciary be free from interference in its operations by such other branches. Indeed, it may well be said that it is the duty of such other branches of government to facilitate the administration of justice by the judiciary."

The first two paragraphs of the syllabus in *Foster, supra,* state:

"The administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers.

"Courts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government. (Paragraph two of the syllabus in *Zangerle* v. *Court of Common Pleas,* 141 Ohio St. 70 [25 O.O. 199], approved and followed.)"

In *State, ex rel. Edwards,* v. *Murray* (1976), 48 Ohio St. 2d 303 [2 O.O.3d 446], in holding that the juvenile and probate court judges could enforce an *ex parte* order for an appropriation of funds in contempt, as well as mandamus, proceedings, the court said:

"There is no question that the administration of justice by the judicial branch of the government may not be impeded by the other branches of govern-

ment in the exercise of its powers or that it is the duty of county commissioners to appropriate funds necessary to facilitate the administration of justice by the Court of Common Pleas and its subdivisions.

. "That this duty is particularized, extended and made legislatively mandatory by R.C. 2151.10 and 2101.11 is recognized by a line of cases, in all of which enforcement of the duty was sought and obtained by an action in mandamus in a court other than the one seeking relief. * * *" *Id.* at 304.

In *State, ex rel. Lorig,* v. *Bd. of Commrs.* (1977), 52 Ohio St. 2d 70 [6 O.O.3d 274], the court allowed a writ of mandamus ordering the county commissioners to appropriate additional funds for the payroll accounts of the court of common pleas, stating that:

"This court has stated in *Zangerle* v. *Court of Common Pleas* (1943), 141 Ohio St. 70 [25 O.O. 199], that '[c]ourts of general jurisdiction * * * possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government.' * * *" *Id.*

Effective July 26, 1979, R.C. 2151.10, applicable to the juvenile court, was amended by Sub. S.B. No. 63, and provided in part:

"The juvenile judge shall annually submit a written request for an appropriation to the board of county commissioners that shall set forth estimated administrative expenses of the juvenile court that the judge considers reasonably necessary for the operation of the court, including reasonably necessary expenses of the judge and such officers and employees as he may designate in attending conferences at which juvenile or welfare problems are discussed * * *. The board shall conduct a public hearing with respect to the written request submitted by the judge and shall appropriate such sum of money each year as it determines, after conducting the public hearing and considering the written request of the judge, is reasonably necessary to meet all the administrative expenses of the court. * * *

"If the judge considers the appropriation made by the board pursuant to this section insufficient to meet all the administrative expenses of the court, he shall commence an action under Chapter 2731 of the Revised Code in the court of appeals for the judicial district for a determination of the duty of the board of county commissioners to appropriate the amount of money in dispute. The court of appeals shall give priority to the action filed by the juvenile judge over all cases pending on its docket. The burden shall be on the juvenile judge to prove that the appropriation requested is reasonably necessary to meet all administrative expenses of the court. * * *"

Substantially identical provisions were also enacted by Sub. S.B. No. 63 in amended R.C. 2101.11, applicable to the probate court, and in amended R.C. 307.01, applicable to the general division of the common pleas court.

In *State, ex rel. Johnston,* v. *Taulbee* (1981), 66 Ohio St. 2d 417 [20 O.O.3d 361], the juvenile court judge followed the procedures in new R.C. 2151.10 and received a writ of mandamus from the court of appeals. On appeal, the Supreme Court affirmed the result reached by the court of appeals, but found the statute unconstitutional. The syllabus in *Taulbee, supra,* states:

"1. The administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers. (Paragraph one of the syllabus in *State, ex rel. Foster,* v. *Bd. of County Commrs.,* 16 Ohio St. 2d 89 [45 O.O.2d 442], approved and followed.)

"2. Courts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to

secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government. (Paragraph two of syllabus in *State, ex rel. Foster,* v. *Bd. of County Commrs.,* 16 Ohio St. 2d 89 [45 O.O.2d 442], approved and followed.)

"3. R.C. 2151.10, effective July 26, 1979, is an impermissible legislative encroachment upon the inherent powers of the judiciary, and is, therefore, unconstitutional."

We are told in the opinion that:

"Prior R.C. 2151.10 mandated that the county commissioners appropriate the amount of money which the juvenile judge, in his sound discretion, deemed appropriate for an orderly and efficient administration of the court.

"If the commissioners felt that the juvenile judge's submitted fiscal appropriations were too extreme, they were allowed legal recourse, but could only challenge the amount requested upon a showing of an abuse of discretion by the juvenile judge.

"Current R.C. 2151.10 is a polar statutory scheme completely reversing the previous policy for the determination of judicial appropriations. Now the determination of appropriations for the administration of the Juvenile Court lies within the sole discretion of the county commissioners, subject to review in mandamus proceedings. The enactment of R.C. 2151.10 is an erosion of a well-settled Ohio law and democratic policy.

"Case law analysis on current R.C. 2151.10 is wanting, and appellants assert that prior case law was premised purely upon strict statutory construction and that the current statute should be given the same legal treatment.

"Appellants' assertion is faulty in that prior case law analysis in this area did not focus upon strict statutory interpretation but rather directed its train of reasoning upon the more significant approach of separation of powers among the various branches of government. The thrust of the opinions echoed the deep-rooted doctrine of a tripartite form of democracy. The decisions reflect that a reasonably exercised spirit of mutual cooperation among the various branches of government is essential, and, more importantly, that the courts possess *inherent powers* to effectuate an orderly and efficient administration of justice without being financially or procedurally inhibited by the General Assembly. *Zangerle* v. *Court of Common Pleas* (1943), 141 Ohio St. 70 [25 O.O. 199]; *State, ex rel. Foster,* v. *Bd. of County Commrs.* (1968), 16 Ohio St. 2d 89 [45 O.O.2d 442]; *State, ex rel. Edwards,* v. *Murray* (1976), 48 Ohio St. 2d 303 [2 O.O.3d 446]; *State, ex rel. Lorig,* v. *Bd. of Commrs.* (1977), 52 Ohio St. 2d 70 [6 O.O.3d 274].

"* * *

"R.C. 2151.10 as it now reads, by its granting to a legislative body, to wit: the county commissioners, the 'power of the purse' over judicial administration, unconstitutionally restricts and impedes the judiciary in complete contradiction of our rudimentary democratic principles." *Id.* at 420-421. (Footnotes omitted.)

The court in the case of *In re Furnishings for Courtroom Two* (1981), 66 Ohio St. 2d 427 [20 O.O.3d 367], held R.C. 307.01(B) unconstitutional for the reasons stated in *State, ex rel. Johnston,* v. *Taulbee, supra.* The opinion, in the context of a contempt action to enforce a common pleas court order directing the appropriation of funds for furnishings and equipment by the county commissioners, states that:

"Courts possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions. *State, ex rel. Foster,* v. *Bd. of County Commrs.* (1968), 16 Ohio St. 2d 89 [45 O.O.2d 442], paragraph two of the syllabus; *Zangerle, supra.* However, because an equal branch of the government may not impinge on the authority and rights of the other branches, a court

cannot exercise its inherent power to order a board of county commissioners to act unless the court's order is reasonable and necessary for the proper and efficient operation of the court. *State, ex rel. Finley,* v. *Pfeiffer* (1955), 163 Ohio St. 149 [56 O.O. 190]. It is, therefore, important that a reviewing court have a complete record of the proceedings below so that it can determine if the trial court abused its discretion in ordering the board of county commissioners to act. It is especially important for the board of county commissioners to ensure that there is a full record because it is incumbent upon the board to point out errors that affirmatively appear in the record. Otherwise, all reasonable presumptions consistent with the record will be indulged in favor of the regularity and legality of the proceedings below. * * *" *Id.* at 430.

Respondent argues that, as a result of *State, ex rel. Johnston,* v. *Taulbee, supra,* a statutory void was created, thus leaving it with no legal duty to fund the operations of the relator judges. However, we note that nothing in *Taulbee, supra,* purports to nullify the statutory duty lodged in the board of county commissioners. The principle of severability as embodied in R.C. 1.50 would preserve the viability of that portion of the statutory scheme that encompasses such duty. Further, in *State, ex rel. Walton,* v. *Edmondson* (1914), 89 Ohio St. 351, the third paragraph of the syllabus states:

"Where an unconstitutional statute contains a clause repealing a prior valid law, for which the later statute was a substitute, the repealing clause will also be held inoperative, in the absence of an expressed intention to repeal the prior law without regard to the substitute."

See, also, *State, ex rel. Attorney General,* v. *Hall* (1902), 67 Ohio St. 303; and *State, ex rel. Wilmot,* v. *Buckley* (1899), 60 Ohio St. 273.

This rule of statutory construction developed in order to prevent a void in the area covered by the unconstitutional statute. See *State, ex rel. Knisely,* v. *Jones* (1902), 66 Ohio St. 453, 482-483. Section 2 of Sub. S.B. No. 63, effective July 26, 1979, repeals then existing R.C. 307.01 and 2151.10, but does not express an intention to repeal the former statutes even in the absence of a substitute. Thus, under either the rule in *State, ex rel. Walton,* v. *Edmondson, supra,* or the principle of severability, the original statutory duty remains unrepealed and in full force.

However, *State, ex rel. Johnston,* v. *Taulbee, supra,* is clearly not based upon statutory analysis. The courts of common pleas exist in and for the respective counties. Section 4(A), Article IV of the Ohio Constitution. They are courts of general jurisdiction. *State, ex rel. Mansfield Telephone Co.,* v. *Mayer* (1966), 5 Ohio St. 2d 222 [34 O.O.2d 428]. The essence of *State, ex rel. Johnston,* v. *Taulbee, supra,* and *In re Furnishings for Courtroom Two, supra,* is that, regardless of statutory authorization, the judges of the courts of common pleas and their divisions have the inherent authority to determine in the first instance, in the exercise of sound discretion, the sum of money reasonable and necessary for the efficient operation of the court, and absent an abuse of discretion in the determination of such sum, may proceed either in contempt or mandamus to receive the necessary funding from their respective counties.

Municipal courts are not courts of general jurisdiction, *State, ex rel. Foreman,* v. *Bellefontaine Municipal Court* (1967), 12 Ohio St. 2d 26 [41 O.O.2d 159]. We accordingly distinguish *State, ex rel. Cleveland Municipal Court,* v. *Cleveland City Council* (1973), 34 Ohio St. 2d 120 [63 O.O.2d 199], wherein the Supreme Court found, based on statutory analysis, that the municipal courts were dependent to a reasonable extent on the municipal authorities for certain court expenditures.

IX.   Discussion — Case No. 11071
(General Division)
and
Case No. 11072 (Juvenile Division)

There is no showing that the relators-judges in case Nos. 11071 and 11072 have abused their discretion in fixing the amounts of money required for their respective 1983 operating budgets. We reject respondent's argument that the relators should have laid off employees earlier in 1983 because of their knowledge that their budget requests could, and finally would, be reduced. It is not claimed that the relators have abused their discretion in establishing either the size or compensation ranges of their staffs.

In case Nos. 11071 and 11072, the relators are entitled to a writ of mandamus.

## X. Discussion — Case No. 11073 (Probate Division)

The court in State, ex rel. Johnston, v. Taulbee, supra, did not specifically hold that the part of R.C. 2101.11(B) containing language substantially identical to that in R.C. 2151.10 was unconstitutional. We have no doubt that it is, and so hold.

However, we have a question not present in case Nos. 11071 and 11072. Both the version of R.C. 2101.11 effective July 26, 1979, and the prior statute contain the limitation that:

"* * * [t]he total compensation paid to the appointees [of the probate judge] in any calendar year shall not exceed the total fees earned by the court during the preceding calendar year, unless approved by the board [of county commissioners]."

The question remains as to the present validity of this limitation on appointee compensation.

In State, ex rel. Motter, v. Atkinson (1945), 146 Ohio St. 11 [31 O.O. 472], the syllabus provides in part:

"The provisions of Section 10501-5, General Code, requiring the county commissioners to appropriate such sums of money each year as will meet all the administrative expense of the Probate Court which the judge thereof deems necessary, including such salaries of the appointees of the court as the judge shall fix and determine, provided, however, that the total compensation of such appointees in any calendar year shall not exceed the total fees earned by the court during the preceding calendar year, * * * are mandatory and it is the duty of such county commissioners to make appropriations for such purposes accordingly."

In State, ex rel. Ray, v. South (1964), 176 Ohio St. 241 [27 O.O.2d 133], the second paragraph of the syllabus provides in part:

"In the absence of an abuse of discretion on the part of the judge of the Probate Court in making up the annual budget, under Section 2101.11, Revised Code, the Board of County Commissioners is obligated to appropriate annually such sum of money as will meet all the administrative expenses of such court which the judge thereof deems necessary, including such salaries of court appointees as the judge shall fix and determine; provided, however, that the total compensation of such appointees in any calendar year shall not exceed the total fees earned by the court during the preceding calendar year. * * *"

In the course of the opinion, the court stated:

"When the General Assembly placed the limitation on the amount of compensation payable to Probate Court employees, its evident purpose was to make the amount of such compensation bear a relationship to the amount of income received in fees. * * *." Id. at 246.

The relator has ordered a sum for employee compensation which is some thirty-three percent greater than fees collected in 1982, and some twenty-five percent greater than that appropriated by respondent. The relator correctly argues that he has the inherent authority to order the appropriation of sufficient monies for the operation of his court. Is the statutory limitation under the facts of this case an impermissible legislative encroachment upon this inherent power?

There has been no showing that

relator has abused his discretion in establishing either the size or compensation ranges of his staff. It is clear that relator is limited as to the amount of fees he may charge. See R.C. 2101.16, 2101.18 and 2101.19. Relator may, however, reduce the fees charged when he collects a sum more than ten percent greater than the sum necessary to pay his salary and that of his employees. R.C. 2101.20.

We are cognizant of the presumption of constitutionality that attends statutory enactments. *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276 [10 O.O.3d 408]; and *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142 [57 O.O. 134]. We note, however, that in neither *State, ex rel. Motter,* v. *Atkinson, supra,* nor *State, ex rel. Ray,* v. *South, supra,* was the constitutionality of the limitation on appointee compensation discussed. Further, neither of these cases utilized the principles relied upon in *State, ex rel. Johnston,* v. *Taulbee, supra.* We are convinced that the statutory limitation on appointee compensation may not validly be applied to the relator under the facts of this case, based on our reading of *State, ex rel. Johnston,* v. *Taulbee, supra,* and the cases on which it relies. See, also, *Commonwealth, ex rel. Carroll,* v. *Tate* (1971), 442 Pa. 45, 274 A. 2d 193; *Noble County Council* v. *State, ex rel. Fifer* (1955), 234 Ind. 172, 125 N.E. 2d 709; *Carlson* v. *State, ex rel. Stodola* (1966), 247 Ind. 631, 220 N.E. 2d 532. For this reason, and the reasons expressed heretofore concerning case Nos. 11071 and 11072, we find that relator is entitled to a writ of mandamus.

### XI. Discussion — Case No. 11059 (Prosecuting Attorney)

Relator argues that the respondent is estopped from challenging the order of January 3, 1983, because the order was not timely appealed. Based on *In re Furnishings for Courtroom Two, supra,* the order of January 3, 1983 is not a final appealable order.

R.C. 309.06 provides:

"On or before the first Monday in January of each year, the judge of the court of common pleas, or, if there is more than one judge, the judges of such court in joint session, may fix an aggregate sum to be expended for the incoming year for the compensation of assistants, clerks, and stenographers of the prosecuting attorney's office.

"The prosecuting attorney may appoint such assistants, clerks, and stenographers as are necessary for the proper performance of the duties of his office and fix their compensation, not to exceed, in the aggregate, the amount fixed by the judges of such court. Such compensation, after being so-fixed, shall be paid to such assistants, clerks, and stenographers biweekly, from the general fund of the county treasury, upon the warrant of the county auditor."

R.C. 309.07 provides in part:

"The prosecuting attorney may appoint secret service officers whose duty it shall be to aid him in the collection and discovery of evidence to be used in the trial of criminal cases and matters of a criminal nature. * * * The compensation of said officers shall be fixed by the judge of the court of common pleas, or, if there is more than one judge, such compensation shall be fixed by the judges of such court in joint session, * * *. Such salary shall be payable monthly, out of the county fund, upon the warrant of the county auditor."

Respondent argues that R.C. 309.06 only gives the court of common pleas the authority to fix the aggregate compensation for personnel performing duties of the prosecuting attorney's office, and that the bureau of support is not a duty of relator's office. However, the first paragraph of R.C. 309.06 provides that the court may fix an aggregate sum for the compensation of assistants, clerks, and stenographers of the prosecuting attorney's office. It does not provide that the court may fix an aggregate sum only for the compensation of personnel per-

forming duties of the prosecuting attorney's office. The sum is fixed for the compensation of personnel who are or may be employed by the prosecuting attorney.

In *State, ex rel. Henderson,* v. *Palermo* (Feb. 19, 1981), Mahoning App. No. 80 C.A. 131, unreported, this court, sitting by assignment, stated that the office of the prosecuting attorney is part of the judicial process. Thus, funds fixed under R.C. 309.06 are necessary, at least in part, for the proper functioning of the courts. Accordingly, pursuant to R.C. 309.06 and 309.07, respondent must appropriate funds in accordance with the order of January 3, 1983, unless it is shown that the court of common pleas has abused its discretion in fixing the aggregate sum.

The order of January 3, 1983, fixes a specific sum for compensation of personnel in the bureau of support. The establishment and operation of the bureau of support is mandated, and may be operated, in Summit County, by either the domestic relations court or the prosecuting attorney. R.C. 2301.35(A)(1); Section 3 of Am. Sub. S.B. No. 87 (effective January 1, 1979). There is no showing that the court of common pleas abused its discretion in fixing a sum for the compensation of relator's staff in the bureau of support.

Nor is there any showing that any of the aggregate sums fixed in the order of January 3, 1983 constituted an abuse of discretion on the part of the court of common pleas. Relator is entitled to a writ of mandamus.

### XII. Summary

We hold that each relator is entitled to a writ of mandamus. We order that a writ of mandamus issue in each case against the respondents, requiring them to act and appropriate for the relators' use in 1983 such sums as were specified by the respective orders of the court of common pleas.

We wish to emphasize, however, that in order to maximize public confidence in the orderly processes of government, the separate branches thereof should strive to discharge their duties with as little discord and as harmoniously as possible. When friction does occur, the resolution of the problem may carry with it some inconvenience and difficulty, especially when that resolution must be imposed, rather than reached by negotiation and compromise.

We feel constrained to remind the parties of the admonition of the Supreme Court in *Taulbee, supra:* "[A] reasonably exercised spirit of mutual cooperation among the various branches of government is essential * * *." *Id.* at 420.

*Writs allowed.*

QUILLIN, P.J., MAHONEY and GEORGE, JJ., concur in case No. 11059.

QUILLIN, P.J., MAHONEY and BAIRD, JJ., concur in case No. 11071.

QUILLIN, P.J., BAIRD and GEORGE, JJ., concur in case No. 11072.

MAHONEY, P.J., BAIRD and GEORGE, JJ., concur in case No. 11073.