**[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 55.]**

THE STATE EX REL. WILKE, JUDGE, *v.* HAMILTON COUNTY BOARD OF

COMMISSIONERS ET AL.

[Cite as *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.*, 2000-Ohio-13.]

*Mandamus sought to compel Hamilton County Board of Commissioners and its*

*members to comply with relator's appropriation orders regarding the*

*1999 and 2000 budgets for the Hamilton County Court of Common Pleas,*

*Probate Division—R.C. 2101.11(B), limiting the Supreme Court's*

*jurisdiction in mandamus, is unconstitutional—Writ granted.*

(No. 99-2325—Submitted July 6, 2000—Decided September 20, 2000.)

IN MANDAMUS.

––––––––––––––––––––

{¶ 1} In August 1997, relator, Judge Wayne F. Wilke of the Hamilton County Court of Common Pleas, Probate Division, submitted the proposed 1998 probate court budget to respondent Hamilton County Board of Commissioners. In the proposed budget, the probate court requested four additional employees: two full-time, one part-time, and one temporary. The probate court needed the increased staff to handle its increasing duties and workload.

{¶ 2} Although she acknowledged the probate court's legitimate need for more employees, Hamilton County Administrative Services Director Suzanne Burck recommended that the board deny the court's request because of the county's projected budgetary shortfall, the addition of three positions to the probate court in 1996, and a decline in the probate court's revenues during the previous several years. Burck further noted that although the public would experience less convenient service from the probate court, the county would save over $60,000 if the board refused the court's request. The board adopted Burck's recommendation and did not appropriate funds for the requested positions.

**{¶ 3}** In 1998, the probate court's staffing shortage became more extreme, and Judge Wilke met with one of the commissioners to address that problem as well as the gap between the salaries paid to probate court employees and those paid to employees in comparable positions in other Hamilton County courts. The board continued to deny the probate court's requests and instead offered to pay for a consultant to study court processes to determine work flow, process improvement, staffing requirements, and competitive compensation for the court. The board also suggested that upon the implementation of any compensation study, the probate court join the county's pay plan, which covers nonjudicial county employees.

**{¶ 4}** Judge Wilke rejected the board's offer to use its consultant to determine the need for additional staff because the consultant had no experience in evaluating courts and would be partially compensated by a percentage of savings realized by the county from implementing its recommendations. Judge Wilke also rejected the board's suggestion that the probate court join the county pay plan because joining the plan would infringe upon the court's constitutional and statutory authority to set its employees' salaries and because no other Hamilton County court was a part of the pay plan.

**{¶ 5}** Nevertheless, to accommodate the board's demands for staffing and compensation studies before it appropriated money for additional staff and increased salaries, Judge Wilke contracted with the National Center for State Courts ("NCSC") to conduct staffing personnel and compensation studies. NCSC is an independent, nonprofit organization dedicated to the improvement of justice, and furthers that purpose by providing technical assistance and consulting services to courts. Judge Wilke also believed that NCSC could objectively evaluate the staffing needs and compensation structure of the probate court. Before Judge Wilke engaged NCSC, the board promised him that it would pay for the costs of any independent studies.

{¶ 6} In November 1998, the probate court submitted its budget request for 1999, which was essentially the same as its actual 1998 budget, and reserved the right to submit a request for supplemental appropriations based on NCSC's personnel and compensation studies. The board's 1999 budget expressly acknowledged the intention of the probate court to employ NCSC to conduct personnel and compensation studies in 1999.

{¶ 7} NCSC completed its studies in the fall of 1999 and recommended the addition of 8.88 full-time employees for the probate court and raises for court employees to bring them in line with the salaries of comparable employees of other divisions of the common pleas court, *e.g.*, the general, domestic relations, and juvenile divisions. County officials were provided with copies of the NCSC reports and recommendations. County officials, however, asked that a work-flow study, which would determine whether new procedures could result in less need for additional personnel, precede any supplemental appropriation based on the NCSC reports. Given the immediate need for more personnel and increased salaries, NCSC and the probate court concluded that NCSC's conducting of staffing and compensation studies before a work-flow study was both appropriate and in the best interest of the court and the county. County officials offered to recommend funding only two new positions and also refused to adopt the raises recommended by NCSC even though the county personnel department's human resources manager stated that the county was "essentially in agreement" with the NCSC recommendations.

{¶ 8} On October 25, 1999, Judge Wilke submitted a written request for supplemental appropriations. Judge Wilke asked for the equivalent of 5.457 full-time employees, *i.e.*, less than the 8.88 additional full-time employees recommended by NCSC. Judge Wilke agreed to a work-flow study by NCSC, but he and the NCSC experts noted that any new labor-saving practices recommended by the study might result in a reduction of only 1.5 to two full-time employees from

the 8.88 additional full-time employees recommended by the NCSC in its staffing study. Judge Wilke also requested supplemental funding for the pay plan recommended by NCSC, including retroactive raises due probate court employees for 1999. And he requested that the board reimburse the court for the $50,000 it spent on the staffing and compensation studies completed by NCSC.

{¶ 9} In November 1999, the county administrator recommended a 2000 budget for the probate court. The budget did not contain any of the supplemental appropriations requested by Judge Wilke and included a three-percent reduction in the probate court base salaries. The board believed that the three-percent figure accounted for the normal turnover of employees in any county department. In fact, however, the probate court's actual employee turnover did not justify the three-percent reduction and new court employees were not hired at the same or lower salaries than departing employees. Further, the board's 2000 budget erroneously applied the three-percent reduction twice to the probate court's base-salary budget.

{¶ 10} In December 1999, when it became evident that the board would not appropriate the requested funds, Judge Wilke issued appropriation orders for 1999 and 2000. Judge Wilke ordered the board to appropriate money for the probate court to (1) fund five new permanent full-time positions and one new permanent part-time position, (2) equip work stations for the new employees, (3) fund the increased salaries recommended by NCSC retroactive to the beginning of 1999, (4) pay for employee performance bonuses, (5) reimburse the court for the cost of the NCSC staffing and compensation studies, and (6) reimburse the court for its reasonable and necessary legal expenses arising from the court's attempts to secure the requested appropriations.

{¶ 11} The additional staff was needed to keep up with the probate court's current caseload. Due to the staffing shortage, there exists a backlog of over twelve thousand cases and other statutorily mandated duties. Moreover, projects essential to the court's administration of justice have been postponed or neglected,

employees have been reassigned from their normal duties, and the public has experienced unreasonable delays in service. Even the NCSC staffing study, which had recommended the hiring of 8.88 additional full-time employees, did not account for the current backlog of work in the probate court.

{¶ 12} In addition, Judge Wilke requested raises in accordance with the NCSC recommendations to prevent the loss of court employees to higher-paying jobs. For example, in 1999, the probate court lost three employees because of dissatisfaction with salaries, and three other employees notified the court that they would leave the court if it could not obtain the raises recommended by NCSC.

{¶ 13} Judge Wilke submitted to the county administrator a formal budget request for 2000 containing the appropriation items specified in his orders. The board concluded that Judge Wilke's orders and requests were unreasonable, in part because he had failed to comply with the timing and information requirements of the county's budget procedure. The board refused Judge Wilke's requests and did not comply with his orders despite the county's budget surpluses of $30,815,000 at the end of 1997, $62,904,000 at the end of 1998, $17,276,936 at the end of 1999, and a projected surplus of $21,366,872 at the end of 2000.

{¶ 14} Judge Wilke then filed this action for a writ of mandamus to compel the board and its members to comply with his appropriation orders regarding the 1999 and 2000 budgets for the probate court. We granted an alternative writ and issued a schedule for the presentation of evidence and briefs. 87 Ohio St.3d 1487, 722 N.E.2d 522. We *sua sponte* ordered the parties to brief both the merits of the cause and the issue  whether the cause should be dismissed because it was not filed in the Court of Appeals for Hamilton County pursuant to R.C. 2101.11(B)(2). *Id.*

{¶ 15} This cause is now before the court for consideration of these issues.

_____

*Porter, Wright, Morris & Arthur*, *Mark E. Elsener*, *Kathleen M. Trafford* and *Julie L. Atchison*, for relator.

*Rendigs, Fry, Kiely & Dennis, L.L.P.*, *David W. Peck* and *James J. Englert*, for respondents.

_____

***Per Curiam.***

R.C. 2101.11(B)(2); Jurisdiction of the Supreme Court

**{¶ 16}** R.C. 2101.11(B)(2) provides the following procedure for a probate judge's request for an appropriation of funds from the board of county commissioners and requires a probate judge who disagrees with the amount appropriated by the board to file a mandamus action in the court of appeals to resolve the dispute:

"The probate judge annually shall submit a written request for an appropriation to the board of county commissioners that shall set forth estimated administrative expenses of the court, including the salaries of appointees as determined by the judge and any other costs, fees, and expenses * * * that the judge considers reasonably necessary for the operation of the court. The board shall conduct a public hearing with respect to the written request submitted by the judge and shall appropriate such sum of money each year as it determines, after conducting the public hearing and considering the written request of the judge, is reasonably necessary to meet all the administrative expenses of the court, including the salaries of appointees as determined by the judge and any other costs, fees, and expenses * * *.

"*If the judge considers the appropriation made by the board pursuant to this division insufficient to meet all the administrative expenses of the court, the judge shall commence an action under Chapter 2731. of the Revised Code in the court of appeals for the judicial district for a determination of the duty of the board of county commissioners to appropriate the amount of money in dispute.* The court of appeals shall give priority to the action filed by the probate judge over all cases pending on its docket. The burden shall be on the probate judge to prove that the

6

appropriation requested is reasonably necessary to meet all administrative expenses of the court." (Emphasis added.)

{¶ 17} Under Section 2(B)(1)(b), Article IV of the Ohio Constitution, the Supreme Court of Ohio has original jurisdiction in mandamus actions, and pursuant to Section 2(B)(3), Article IV, "[n]o law shall be passed or rule made whereby any person shall be prevented from invoking the original jurisdiction of the supreme court." See, also, *State ex rel. Natl. City Bank v. Cleveland City School Dist. Bd. of Edn.* (1977), 52 Ohio St.2d 81, 86, 6 O.O.3d 288, 291, 369 N.E.2d 1200, 1203.

{¶ 18} Based on these constitutional provisions, R.C. 2101.11(B) is unconstitutional because it prevents a probate court judge dissatisfied with the amount appropriated for the probate court from invoking the original jurisdiction of this court in mandamus. Instead, it relegates an aggrieved probate judge to a mandamus action in the court of appeals. Statutes, including R.C. 2101.11, "should not be construed as controlling the exercise of original jurisdiction in [extraordinary writ actions] constitutionally granted to courts of appeals and this court." *State ex rel. Pirman v. Money* (1994), 69 Ohio St.3d 591, 593, 635 N.E.2d 26, 29, citing Whiteside, Ohio Appellate Practice (1993) 134, Section T 10.07.

{¶ 19} This result is consistent with precedent. For example, in *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 512, 651 N.E.2d 937, 939, we expressly held that "a writ of mandamus is available in this court to compel funding for the reasonable and necessary expenses of the court of common pleas and its divisions." And in that case, we denied a motion to dismiss the mandamus action in which the board of county commissioners argued that under R.C. 2101.11, the mandamus action should have been filed in the court of appeals rather than the Supreme Court. See 71 Ohio St.3d 1479, 645 N.E.2d 1258.

{¶ 20} Finally, respondents do not assert that R.C. 2101.11(B)(2) required Judge Wilke to file this mandamus action in the court of appeals.

**{¶ 21}** Based on the foregoing, the merits of Judge Wilke's mandamus action are properly before this court.

Mandamus: Burden of Proof and Presumptions in Common Pleas Court

Appropriation Cases

**{¶ 22}** Judge Wilke requests a writ of mandamus to compel the board to comply with his probate court appropriation orders for 1999 and 2000. In resolving his claim, we are guided by the following.

**{¶ 23}** Common pleas courts and their divisions possess inherent authority to order funding that is reasonable and necessary to the court's administration of its business. *State ex rel. Lake Cty. Bd. of Commrs. v. Hoose* (1991), 58 Ohio St.3d 220, 221, 569 N.E.2d 1046, 1048; *State ex rel. Weaver v. Lake Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d 204, 205, 580 N.E.2d 1090, 1092; *Morley*, 72 Ohio St.3d at 511, 651 N.E.2d at 939. In turn, the board of county commissioners is obligated to appropriate the requested funds, unless the board can establish that the court abused its discretion by requesting unreasonable and unnecessary funding. *State ex rel. Avellone v. Lake Cty. Bd. of Commrs.* (1989), 45 Ohio St.3d 58, 61, 543 N.E.2d 478, 481, and cases cited therein.

**{¶ 24}** In effect, the court's funding orders are presumed reasonable, and the board bears the burden to rebut the presumption. *State ex rel. Donaldson v. Alfred* (1993), 66 Ohio St.3d 327, 329, 612 N.E.2d 717, 719. This presumption emanates from the separation-of-powers doctrine because courts must be free from excessive control by other governmental branches to ensure their independence and autonomy. *Morley*, 72 Ohio St.3d at 512, 651 N.E.2d at 939, quoting *Hoose*, 58 Ohio St.3d at 221-222, 569 N.E.2d at 1048; *Donaldson*, 66 Ohio St.3d at 329, 612 N.E.2d at 719.

**{¶ 25}** With the foregoing precedent in mind, we next consider the merits of Judge Wilke's mandamus claim.

1999 and 2000 Probate Court Budget Orders

{¶ 26} In attempting to satisfy its burden to rebut the presumed reasonableness of Judge Wilke's funding orders, the board asserts that Judge Wilke abused his discretion by ordering funding for (1) additional court employees before the completion of a work-flow study, (2) expenses associated with the NCSC staffing and compensation studies, (3) overtime and temporary employees, and (4) retroactive lump-sum payments for 1999 salary increases.

{¶ 27} "Abuse of discretion" implies an unreasonable, arbitrary, or unconscionable attitude. *State ex rel. First New Shiloh Baptist Church v. Meagher* (1998), 82 Ohio St.3d 501, 503, 696 N.E.2d 1058, 1059-1060. And the reasonableness of a court's request "must be determined 'only from a consideration of the request in relation to the factual needs of the court for the proper administration of its business.' " *State ex rel. Milligan v. Freeman* (1972), 31 Ohio St.2d 13, 18, 60 O.O.2d 7, 10, 285 N.E.2d 352, 355, quoting *State ex rel. Moorehead v. Reed* (1964), 177 Ohio St. 4, 5, 28 O.O.2d 409, 201 N.E.2d 594, 596.

{¶ 28} It was reasonable for Judge Wilke to order funding for additional court employees before the completion of a work-flow study. The evidence establishes that his request for the equivalent of 5.457 full-time employees was supported by the NCSC staffing study. Judge Wilke's order to appropriate funding for these additional employees before the completion of a work-flow study was also justified by the immediacy of the employee-shortage problem.

{¶ 29} In addition, Judge Wilke's order for the board to reimburse the court for expenses incurred on the NCSC staffing and compensation reports reasonably related to the court's proper administration of its business. The reports were demanded by the board and county officials and involved improving the probate court's ability to perform its judicial duties. Respondents' disagreement with the methodology employed by NCSC in making its staffing recommendations does not alter our conclusion that Judge Wilke's reimbursement order is warranted because the methodology was reasonable. The board is not authorized simply to substitute

its judgment for that of Judge Wilke in these matters. Cf. *State ex rel. Foster v. Wittenberg* (1968), 16 Ohio St.2d 89, 45 O.O.2d 442, 242 N.E.2d 884, paragraph three of the syllabus.

{¶ 30} Judge Wilke's orders for funding for overtime and temporary employees are also justified. Despite respondents' claims that these orders are unnecessary due to the concurrent order for additional permanent employees to alleviate the same worker shortage, the NCSC staffing report recommended 8.88 full-time employees rather than the 5.457 employees ordered by Judge Wilke, and the report did not account for the probate court's extensive case backlog.

{¶ 31} Moreover, Judge Wilke's orders for retroactive lump-sum payments of 1999 salary increases in December 1999 were reasonably related to the court's judicial business. The board acknowledged in its 1999 budget the court's intention to conduct a compensation study, and the board was notified by Judge Wilke in 1998 that he reserved the right to request supplemental appropriations for 1999 based on the NCSC compensation study. The county personnel department's human resources manager stated that the county was essentially in agreement with the requested salary increases.

{¶ 32} In addition, the board and its members remain under a duty to appropriate the probate court's reasonable and necessary expenses as long as those needs exist, and to the extent that these needs extend into succeeding budget years, the duty continues. *Weaver*, 62 Ohio St.3d at 208, 580 N.E.2d at 1094. And a court may modify its budget any time to include retroactive payments for that year, assuming that this modification is otherwise reasonable and necessary. *State ex rel. Arbaugh v. Richland Cty. Bd. of Commrs.* (1984), 14 Ohio St.3d 5, 14 OBR 311, 470 N.E.2d 880 (mid-year amended budget request for salary increases). We consequently find that the retroactive raises are reasonable and still necessary in order to prevent the loss of additional court employees.

10

Three-Percent Turnover Rate

{¶ 33} The board next challenges the probate court's orders because they do not contain the board's three-percent turnover reduction rate, a rate which the board applies generally to personnel expenditures for all county departments to conform to the departments' actual base-salary expenditures by accounting for annual employee turnover. The board claims that its application of the rate as a budgeting tool is reasonable because it has worked in the past; that is, the probate court has never needed additional funding of base salaries due to the reduction rate. The board also contends that it promised to fund any shortfall.

{¶ 34} Simply because the board's application of the rate may be reasonable does not render the court's refusal to apply the rate unreasonable. In fact, the probate court's actual experience for employee turnover does not conform to the three-percent reduction rate, and new court employees have not generally been hired at the same salaries as or lower salaries than departing employees.

{¶ 35} Furthermore, the imposition of this rate and the board's agreement to fund any shortfall due to this rate would give the board an unconstitutional "continuing and uncontrolled veto power over any expenditure in excess of the appropriation as to judicial funds." *State ex rel. Hitchcock v. Derck* (Aug. 18, 1983), Paulding App. No. 11-83-1, unreported, 1983 WL 7320. The board cannot direct, control, or impede the probate court's exercise of judicial functions through application of this rate. *Zangerle v. Cuyahoga Cty. Court of Common Pleas* (1943), 141 Ohio St. 70, 25 O.O. 199, 46 N.E.2d 865, paragraph two of the syllabus. The board also erroneously applied this reduction rate twice to Judge Wilke's 2000 budget.

{¶ 36} Therefore, the court's decision to order that funds not be reduced by the turnover rate is reasonable and cannot be controlled by the board.

Board's Budget Process

{¶ 37} The board contends that it has no duty to appropriate the funding requested by Judge Wilke due to his failure to even minimally comply with the board's budget process. The board's contention lacks merit.

{¶ 38} We have warned that although "[t]he public interest is served when courts co-operate with executive and legislative bodies in the complicated budgetary processes of government * * *, such voluntary co-operation should not be mistaken for a surrender or diminution of the plenary power to administer justice which is inherent in every court whose jurisdiction derives from the Ohio Constitution." *State ex rel. Giuliani v. Perk* (1968), 14 Ohio St.2d 235, 237, 43 O.O.2d 366, 367, 237 N.E.2d 397, 399; *Arbaugh*, 14 Ohio St.3d at 5-6, 14 OBR at 311, 470 N.E.2d at 881.

{¶ 39} It appears that much of the failure by Judge Wilke to strictly follow the timing requirements of the board's budget procedure was engendered by the board and county officials' unjustified, repeated refusal for several years to fund his requests for reasonable and necessary probate court expenses.

{¶ 40} In this regard, *State ex rel. Britt v. Franklin Cty. Bd. of Commrs.* (1985), 18 Ohio St.3d 1, 18 OBR 1, 480 N.E.2d 77, does not support respondents' contentions. In *Britt*, we denied a writ of mandamus to compel a board of county commissioners to fully fund a common pleas court's budget request because the requested salary increase was too precipitous and caused an inordinate strain on the county budget. These factors are absent here, where Hamilton County has regularly had budgetary surpluses that greatly exceeded the probate court's reasonable and necessary funding requests.

{¶ 41} Finally, even assuming that the board's 2000 budget request was submitted with too little time for board consideration before it adopted its 2000 budget, the mere filing of this mandamus action did not, as respondents assert, prevent the board from determining the propriety of the court's funding request during the pendency of this action. The board had sufficient time to review Judge

Wilke's funding requests while this case was pending. And in mandamus actions, we are not restricted to considering facts and circumstances at the time a proceeding is instituted, but we consider the facts and conditions at the time we determine whether to grant the writ. See *State ex rel. Wilson v. Sunderland* (2000), 87 Ohio St.3d 548, 549, 721 N.E.2d 1055, 1057. The board had sufficient time to review Judge Wilke's funding requests while this case was pending.

R.C. 2101.11 as an Alternative Remedy

{¶ 42} Respondents further claim that the budget process specified in R.C. 2101.11(B) constitutes an adequate legal remedy that precludes the requested extraordinary relief in mandamus. A writ of mandamus will not be issued if there is a plain and adequate remedy in the ordinary course of the law. R.C. 2731.05; *State ex rel. Warren v. Boggins* (1999), 87 Ohio St.3d 264, 719 N.E.2d 549.

{¶ 43} R.C. 2101.11(B) does not provide an adequate legal remedy for Judge Wilke because it is unconstitutional. This statute would permit the board of county commissioners to substitute its judgment for that of the court regarding the propriety of funding requested by the court and places the burden on the probate court to prove that its request is reasonably necessary. See *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 20 O.O.3d 361, 423 N.E.2d 80, and *In re Furnishings & Equipment for Courtroom Two* (1981), 66 Ohio St.2d 427, 20 O.O.3d 367, 423 N.E.2d 86, holding that virtually identical statutory provisions applying to juvenile courts (R.C. 2151.10) and general divisions of common pleas courts (R.C. 307.01[B]) are unconstitutional. See, also, *State ex rel. Slaby v. Summit Cty. Council* (1983), 7 Ohio App.3d 199, 7 OBR 258, 454 N.E.2d 1379, relying on *Johnston* to hold that R.C. 2101.11(B), including its requirement that total compensation of probate court appointees shall not exceed the total fees earned by the court during the preceding calendar year, is unconstitutional. Thus, R.C. 2101.11(B) unconstitutionally restricts and impedes the probate court's

constitutional and statutory authority to employ personnel.  See *Johnston* and *Slaby*, *supra*; Section 4(C), Article IV, Ohio Constitution; R.C. 2101.11(A)(1).

Legal Expenses

**{¶ 44}** Finally, we also find that Judge Wilke was justified in ordering the board to appropriate money to pay his legal expenses associated with his budget dispute with the board.  Upon Judge Wilke's request, the Hamilton County Prosecuting Attorney applied pursuant to R.C. 305.14 for the appointment of special private counsel to represent the probate court in the budget dispute. Although the board refused to join in the application, the common pleas court granted it and authorized the probate court to employ private counsel for this dispute.  Judge Wilke's 1999 appropriation order included a directive for the board to pay "pursuant to statute or reimburse this court its reasonable and necessary legal expenses, including attorneys fees, arising from, resulting in, or occasioned by this Journal Entry and Order, and any subsequent mandamus action necessitated by its refusal or failure to comply herewith."

**{¶ 45}** A judge has the inherent authority to order a legislative body to provide funding necessary for the efficient administration of the court, including funding private counsel to represent the court.  *Donaldson*, 66 Ohio St.3d at 331, 612 N.E.2d at 721.  The probate court's representation by private counsel in this mandamus action and the budget dispute was necessary for the efficient administration of the court.

**{¶ 46}** Furthermore, reimbursement of these expenses is warranted under R.C. 305.14.  The prosecuting attorney had a conflict of interest that prevented him from representing the court and the board in the mandamus action, and given the board's refusal to agree to appoint counsel to represent the court, the common pleas court properly authorized the appointment of private counsel for Judge Wilke.  See *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 463-464, 20 O.O.3d 388, 390-391, 423 N.E.2d 105, 109; R.C. 309.09(A); see, also, *State ex rel. Hillyer*

*v. Tuscarawas Cty. Bd. of Commrs.* (1994), 70 Ohio St.3d 94, 98, 637 N.E.2d 311, 315; 1998 Ohio Atty. Gen. Ops. No. 98-005.

{¶ 47} Therefore, under both the probate court's inherent and statutory authority, Judge Wilke's order for the board to pay its legal expenses was reasonable.

## Conclusion

{¶ 48} In sum, respondents did not introduce evidence sufficient to rebut the presumption that Judge Wilke's 1999 and 2000 budget orders are reasonable and necessary. Judge Wilke did not act in an unreasonable, arbitrary, or unconscionable manner in ordering the board to appropriate the requested funds.

{¶ 49} Based on the foregoing, we grant Judge Wilke a writ of mandamus to compel the board and its members to comply with his appropriation orders regarding the 1999 and 2000 budgets for the probate court.

*Writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————