STAUFFER et al., Appellants,

v.

MILLER et al., Appellees.

[Cite as *Stauffer v. Miller* (1992), 79 Ohio App.3d 100.]

Court of Appeals of Ohio,
Washington County.

No. 91 CA 2.

Decided April 3, 1992.

*Lavelle Law Offices* and *John P. Lavelle,* for appellants.

*Downes & Hurst* and *Rufus B. Hurst,* for appellees.

*Lee Fisher,* Attorney General, and *George Revta, Jr.,* Assistant Attorney General, urging reversal on behalf of appellant, Washington County Board of Elections, for *amicus curiae,* Robert Taft, Ohio Secretary of State.

HARSHA, Judge.

This is an appeal from a judgment entered by the Washington County Court of Common Pleas in an action filed by the Washington County Board of Elections ("board") against the Washington County Board of Commissioners ("commissioners") pursuant to R.C. 3501.17. The board, deeming the appropriations by the commissioners insufficient "to provide for the necessary and proper expenses of the board," applied to the court of common pleas to "fix the amount necessary to be appropriated * * *." The court ruled that appellants had failed to establish that the higher appropriations they sought were "necessary" and fixed the appropriation at $170,642 for the year 1990. Appellants filed a timely appeal raising the following assignment of error:

"The trial court erred to the prejudice of the appellants by failing to consider whether the budget request for additional employee compensation appropriations from appellees was proper when fixing the necessary appropriation amount in a Revised Code Section 350.17 [*sic* ] proceeding."

The case below was decided upon the pleadings and stipulations of the parties.[1] It appears that the basic disagreement involved a dispute over the

---

1. See Appendix.

amount to be appropriated to the employee salary account, as well as the provision and payment of insurance benefits. The trial court did not address the question of whether the board's request was reasonable, but rather found that since the board had failed to establish that the requested appropriations were strictly necessary, the court would not approve the petition in the full amount.

■ Initially, this court must determine our role in reviewing the trial court's decision, *i.e.*, what is the proper standard of review? Are we to review this matter as if it were an appeal from an administrative decision? See *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266–267, wherein it is stated that the functions of the trial court and court of appeals are vastly different in the scope of their respective reviews. We think not, because such an appeal is from a quasi-judicial decision in an administrative setting. Here, the decision of the commissioners on budgetary matters is legislative in character and thus not normally subject to review on appeal by the judicial branch of government. However, the legislature in this instance has provided a special *de novo* proceeding in the court of common pleas to resolve budgetary disputes between the board and the commissioners. Presumably, this mechanism was provided in light of the essential role the board plays in the democratic process and to avoid partisan attempts to stifle its independence. (We are quick to note that there is not even an inference in the record that this latter concern is at the heart of the present conflict before us.)

In spite of some uncertainty on our part in applying an appropriate standard of review in scrutinizing the factual determination by the trial court, we remain convinced that we need not afford the trial court any deference in the determination of purely legal questions. Because we believe the assignment of error addresses a purely legal issue, we proceed to analyze that question independently of the trial court's determination.

■ The central issue in this case involves the construction of R.C. 3501.17, which states in part:

"The expenses of the board of elections shall be paid from the county treasury, in pursuance of appropriations by the board of county commissioners, in the same manner as other county expenses are paid. If the board of county commissioners fails to appropriate an amount sufficient to provide for the *necessary and proper expenses* of the board of elections, such board may apply to the court of common pleas within the county, which shall fix the *amount necessary* to be appropriated and such amount shall be appropriated." (Emphasis supplied).

As the trial court so aptly concluded in a prime example of litotes, the legislature has not crafted this statute with much precision. In reviewing this statute, we look to various rules of statutory construction set forth by the Revised Code and pronounced by the Ohio Supreme Court. R.C. 1.42 mandates that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." See, also, *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370. In reviewing a statute, we are to presume that a just and reasonable result capable of being executed is intended. R.C. 1.47(C) and (D). Where the statute is ambiguous, we may consider the object sought to be attained and the consequences of a particular construction. R.C. 1.49(A) and (E).

Accordingly, we look first to the statute as a whole to determine its general intent and purpose. The language of R.C. 3501.17 suggests that the legislature expected disputes over the expenses submitted by a board to its commissioners. That is, the legislature recognized the potential for disputes resulting from the commissioners' exercise of discretion in reviewing the requests submitted by a board, thus providing for a secondary review by the court. If the commissioners did not have this discretion and appropriation were mandatory, there would be no need for a secondary review. A system of checks and balances is envisioned by the statute. The language of R.C. 3501.17 puts a check on the board's discretion by providing that the board's expenses shall be paid "in pursuance of appropriations by the * * * commissioners." The commissioners are, in turn, checked by the power of the board to apply to the common pleas court for additional appropriations. The common pleas court's role is to determine how large an appropriation is needed in order to allow the board to operate in conformance with its statutory duties. In a nutshell, the question becomes, Does this mean an amount based upon strict necessity or may the court award a larger amount so long as it is reasonably appropriate to accomplish the board's purpose?

In support of their assignment of error, appellants, as well as the *amicus curiae*, urge us to adopt the reasoning of the Court of Appeals for Miami County in *In re Appointment of Additional Legal Counsel, Miami Cty. Bd. of Elections* (Nov. 28, 1990), Miami App. No. 90 CA 22, unreported, 1990 WL 187524, hereinafter *"In re Appointment."* In that case, the board of elections requested the court of common pleas to order the commissioners to appropriate additional funds to the board's salary account pursuant to R.C. 3501.17. The court of common pleas held in favor of the board of elections and the commissioners appealed.

The court of appeals in *In re Appointment* was called upon to determine whether the trial court erred in finding that the increased appropriation was

both necessary and proper after the trial court had concluded that the record was "devoid of any factual basis to support the necessary element * * *." The court of appeals held that the trial court had, as a matter of law, misperceived the board's burden of proof on the question of necessity. The salary expense was "necessary," in that appellate court's view, because R.C. 3501.09 required the board to hire a director and deputy director. The appellate court held that as the board was statutorily required to appoint persons to those positions, it was "necessary" to pay them a salary. Thus, the only question for the trial court was whether the amount of the salary expense was "proper." Ironically, the propriety of the amount was not raised as an issue upon appeal. Thus, the court of appeals affirmed the trial court's judgment, albeit for a different reason. See *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 551 N.E.2d 172.

R.C. 3501.17 reads that if the commissioners fail "to appropriate an amount sufficient to provide for the *necessary and proper expenses* of the board * * *," the court may upon petition "fix the *amount necessary* to be appropriated." (Emphasis added.) In deciphering this language, the court of appeals in *In re Appointment* looked at "necessary and proper" as being in the disjunctive and attempted to give meaning to each word separately. Furthermore, the court concluded that "necessary," meaning essential or strictly necessary, applied to the nature of an expense, *i.e.,* what type of an expense was involved. The trial court in our case focused on "the amount *necessary*" language to find that not only the nature of the expenditure must be strictly necessary, but also that the amount of the appropriation must be essential before the court is authorized to approve it.

Initially, we believe the phrase "necessary and proper" must be viewed in the conjunctive in accordance with the rules of grammar and common usage. Black's Law Dictionary defines the phrase "necessary and proper" as "that which is reasonably sufficient to meet a statutory duty." In common usage, the phrase simply means "appropriate." We do not believe that the disjunctive analysis of this phrase with its resulting emphasis on strict necessity conforms to the legislature's intent. A standard of strict necessity would result in a *de minimis* functioning of the board of elections. The importance of maintaining the independent nature of the board was recognized in *State ex rel. Ruggles v. Howser* (May 2, 1988), Brown App. No. CA87–11–017, unreported, 1988 WL 41496, citing *State ex rel. Columbus Blank Book Mfg. Co. v. Ayres* (1943), 142 Ohio St. 216, 27 O.O. 176, 51 N.E.2d 636, paragraph two of the syllabus. In *Ruggles,* the court held:

"The independence of the county board of elections to effectively and efficiently conduct public elections is so fundamental to the right to vote that

political maneuvering in any form which might in any way compromise that independence cannot be tolerated."

The importance of maintaining the political independence of the board is reflected throughout Title 35 of the Revised Code. Given its importance in the democratic process, a *de minimis* capacity could not be the logical intent of the legislature.

Unlike the trial court, we believe the phrase "fix the amount necessary to be appropriated" must be read in the context of the foregoing phrase "necessary and proper expenses," *i.e.*, appropriate. To us, the amount necessary to be appropriated is simply that figure which will satisfy the "appropriate" expenses of the board. In other words, the court first determines what is reasonably sufficient, *i.e.*, appropriate, to satisfy the board's statutory duty. Then it orders such an amount to be appropriated because it is *necessary* to effectuate the court's determination. We are quick to acknowledge that the trial court's interpretation of the statute is not arbitrary or without reason. In fact, it is quite logical and if our review was based upon an abuse of discretion standard, we would have no reason to reverse it. However, as stated above, we see our role in this case as affording us an independent examination of a legal question, and thus we reach our conclusion without deference to the trial court's able decision.

Furthermore, in reaching our decision, we are aware of the Supreme Court's recent pronouncement in *State ex rel. Veterans Serv. Office v. Pickaway Cty. Bd. of Commrs.* (1991), 61 Ohio St.3d 461, 575 N.E.2d 206, which determined in a *mandamus* action that agencies are not entitled to an automatic appropriation of all monies requested, even if the request is reasonable. We distinguish that case from ours on the basis of the nature of the two proceedings, *i.e.*, mandamus versus a special statutory procedure and the independent nature and function of the board of elections. Moreover, we do not see a real conflict since the court of common pleas is authorized to exercise its discretion in fixing the appropriation here.

Because, in our opinion, the trial court used an erroneous construction of the statute and thus held appellants to an improper burden of proof, we reverse and remand for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, P.J., and PETER B. ABELE, J., concur.

APPENDIX

The following stipulations are relevant to our decision:

"1. Plaintiffs are the duly recommended, appointed, and acting members of the Washington County Board of Elections.

"2. Defendants are the duly elected and acting members of the Washington County Board of Commissioners.

"3. For the year ending December 31, 1987, the sum of $170,116.12 was appropriated by the Washington County Board of Commissioners to the Washington County Board of Elections (Joint Exhibit A, Column 4; Joint Exhibit B), and, during 1987, the Board of Elections expended $150,898.19 (Joint Exhibit C, Column 3).

"4. For the year ending December 31, 1988, the sum of $167,056.00 was initially appropriated by the Washington County Board of Commissioners to the Washington County Board of Elections (Joint Exhibit C, Column 4; Joint Exhibit D), and, during 1988, the Board of Elections expended $189,629.34 (Joint Exhibit E, Column 3; Joint Exhibit F).

"5. During 1988, and as a consequence of special elections held during that year, an additional $24,384.13 was appropriated by the Washington County Board of Commissioners to the Washington County Board of Elections for a total appropriation in 1988 of $191,440.13 (Joint Exhibit F1–F7).

"6. For the year ending December 31, 1989, the sum of $174,620.00 was initially appropriated by the Washington County Board of Commissioners to the Washington County Board of Elections (Joint Exhibit E, Column 4; Joint Exhibit G), and, during 1989, the Board of Elections expended $199,672.99 (Joint Exhibit H).

"7. During 1989, and as a consequence of special elections held during that year, an additional $29,055.64 was appropriated by the Washington County Board of Elections for a total appropriations in 1989 of $203,675.64 (Joint Exhibit H1–H5).

"8. For the year ending December 31, 1990, the sum of $170,642.00 was appropriated by the Washington County Board of Commissioners to the Washington County Board of Elections (Joint Exhibit J), based on a requested budget of $185,684.00 (Joint Exhibit E, Column 5).

"9. Through September 30, 1990, the Washington County Board of Elections has expended $111,212.75 of the funds appropriated for 1990 and has a free balance of $59,952.76 (Joint Exhibit K).

"10. As to the budget request for 1990 and the appropriation in response thereto, the principal disagreement between the Washington County Board of Commissioners and the Washington County Board of Elections relates to budget account number A003–A02, Salaries–Employees (Joint Exhibit L; M–2).

"11. The second disagreement between the Washington County Board of Commissioners and Washington County Board of Elections relates to the full payment of insurance premiums for employees of the Board of Elections (Joint Exhibit L, M–2).

"12. The disagreement between the parties on the issue of which party has the power and legal authority to contract for and pay for the cost of group insurance policies that may provide benefits for hospitalization, surgical care, major medical care, disability, dental care, eye care, medical care, hearing aids, or prescriptions for drugs, sickness and accident insurance, or group life insurance, or a combination of any of the foregoing types of insurance or coverage for the full-time employees of the Board of Elections and their immediate dependents has the following history:

"(A) In all of 1987, the Board of Elections' cost for insurance was deducted, by voucher, each month from the Board's A403–A09 'Other Expense' account. Sometime during the year 1988, the Washington County Auditor indicated that this insurance coverage would be handled directly and the line item account for insurance was reduced by $5,000.00 from the Washington County Board of Election's [sic] Budget. The actual expense for 1987 for this coverage was $4,477.50 (See Joint Exhibit N). By Resolution of September 28, 1989, and commencing on or about October 6, 1989, the Washington County Board of Commissioners commenced a policy of having a portion of the cost of insurance deducted from all County employees under the jurisdiction of the County Commissioners, including that of the Board of Elections. The employees of the Board of Elections currently involved or affected by this process are the two full-time employees and two regular part-time clerk employees.

"In 1990, the coverage provided was modified to a preferred provider system. These modifications have resulted in a change (net aggregate total cost) since 1987 for the employees of the Board of Elections in amounts equal to the following: (See Joint Exhibit O)

| | |
|---|---|
| "Mary Burnworth | $ 314.25 |
| "Kathy Bossert | $ 2,512.15 |
| "Lynn Vermaaten | $ 314.25 |
| "Joanne Ollom | $ –0– |

"B. As a result of the change in insurance coverage outlined in 3(A) above, any County employee electing full family coverage would have a potential maximum cost exposure for this benefit equal to $100.20 per month or $1,202.40 per year.

"13. In the 1990 Budget, the Board of County Commissioners reduced the 3A2 'Salaries–Employees' account by $9,042.90 ($108,044.90 less $99,002.00). The portion in the 'Salaries–Employees' that is not in dispute has to do with poll workers and temporary employees. The disputed portion has to do with the following four named employees at the Board of Elections:

|  | "Requested for 1990 | Appropriated 1990 |
|---|---|---|
| "Mary Burnworth | $22,401.60 | $21,221.00 |
| "Kathy Bossert | $22,201.60 | $21,021.00 |
| "Lynn Vermaaten | $ 9,680.00 | $ 9,152.00 |
| "Joanne Ollom | $ 9,680.00 | $ 9,152.00 |

"The funding for the salaries for these employees in 1990 is less than in 1986. In each year since 1986 the Board of Elections has, however, had a surplus balance in its accounts at year end.

"14. The Board of Elections of Washington County (open until 5:00 p.m. Monday through Friday) sets its own hours of operation and compensation; a County similar in size and immediately adjacent to Washington County, namely Athens County, whose Board of Elections is only open from 8:00 a.m. to 4:00 p.m. each day, pays their comparable employees in 1990 as follows:

| "Director | $23,531.30 |
|---|---|
| "Deputy Director | $22,199.58 |
| "Full-time Clerk | $13,991.64 |
| "Full-time Clerk | $13,991.64 |
|  | $73,714.16 |

"15. Attached is a listing of all of the counties in Ohio setting forth the population, number of electors, number of precincts and compensation of various Boards of Elections in 1989. (Joint Exhibit P)

"By agreement, the parties to this matter will supplement these stipulations should additional stipulations be determined to be necessary."