The STATE ex rel. TRUSSELL et al.

v.

MEIGS COUNTY BOARD OF COMMISSIONERS et al.

[Cite as *State ex rel. Trussell v. Meigs Cty. Bd. of Commrs.,*
155 Ohio App.3d 230, 2003-Ohio-6084.]

Court of Appeals of Ohio,
Fourth District, Meigs County.

No. 03CA1.

Decided Nov. 7, 2003.

Sowash, Carson & Ferrier, Herman A. Carson and Joseph A. Hazelbaker, for relators.

Peck, Shaffer & Williams, L.L.P., and Thomas A. Luebbers, for respondents.

Per Curiam.

{¶ 1} In his second amended complaint, relator, Ralph E. Trussell, Sheriff of Meigs County, seeks a writ of mandamus to compel respondents, the Board of Commissioners of Meigs County and its members, individually, to fund his office for fiscal year 2003 in the full amount listed in his request for appropriations and to retroactively fund approximately $140,000 expended by the sheriff's office in fiscal year 2002 without an appropriation. He alleges that the board has a clear duty to fully fund the mandatory, statutorily imposed duties of his office (1) under the constitutional doctrine of "separation of powers"; (2) that the board has abused its discretion by failing to appropriate the amounts he requested to fund both his mandatory and nonmandatory duties; (3) that the board has a duty to fund the mandatory duties of county government, including mandated duties of his office, before funding nonmandatory duties; and (4) that the board cannot evade its duty by pleading financial hardship.

## CONCLUSION

{¶ 2} Because we find that the board had no duty to appropriate all of the funds requested by the sheriff under the separation-of-powers doctrine, that no special statute requires full funding of the office of sheriff, and that the board did not abuse its abuse its discretion by appropriating a lesser amount than the sheriff requested, we deny the writ.

## FACTS

{¶ 3} For 2002, the sheriff requested $738,384.50 to operate his office.[1] The

---

1. Sheriff's evidence, Tab 1, affidavit of Sheriff Ralph E. Trussell, ¶ 16.

board appropriated $651,963.62,[2] 88.3 percent of the amount requested. As a result, the sheriff states that, in October 2002, he was forced to lay off 11 of 19 employees, close his office from 2:00 a.m. to 6:00 a.m. each weeknight and all day Sunday, that he was "otherwise prevented from meeting my mandatory and day-to-day responsibilities," and that the necessary expenses of his office exceeded the appropriation by "approximately $140,000."[3]

{¶ 4} For 2003, the sheriff requested a total appropriation of $867,341.50.[4] The board appropriated $537,188.71, 62 percent of the amount requested, and 17.6 percent less than was appropriated in 2002. However, the sheriff alleges that his actual operating budget is only $271,179 for 2003, "due, in part, to the * * * [board's] encumbering $200,000 of the net appropriation for prisoner housing, medical care and meals and charging over $64,000 in 2002 expenditures to my 2003 budget."[5]

{¶ 5} The sheriff also alleges that his office is severely understaffed and ill equipped. He alleges, and the board does not dispute, that the office's law enforcement division is understaffed by 7.5 officers—three road officers, one and one-half process servers, and three school resource/D.A.R.E. officers[6]; that the corrections division[7] is understaffed by four corrections officers, one contract physician, and one contract nurse[8]; that the court services division is under-staffed by a half-time officer[9]; that the communications division is understaffed by four communications officers/dispatchers[10]; and that training expenses will exceed $15,000.[11] The appropriation for salaries, except that of the sheriff, which

---

2. Board's evidence, Tab 4.

3. Trussell affidavit, ¶ 19 and 25.

4. Exhibit A, attached to second amended complaint.

5. Trussell affidavit, ¶ 28.

6. Trussell affidavit, ¶ 37, Table A.

7. The parties seem to agree that $200,000 has been appropriated in fiscal 2003 for jail-related expenses. The sheriff also alleges that the jail was closed in October 2002 and cannot be reopened because of substandard conditions. Id., ¶ 58 and 60. Apparently, the appropriation for prisoners is to be paid, at least in part, to Noble and Washington Counties, with whom the board has contracted to house prisoners. Sheets affidavit, ¶ 15.

8. Trussell affidavit, ¶ 38, Table A.

9. Id., ¶ 39 and 41.

10. Id., ¶ 40.

11. No funds were appropriated for training in 2003. Board's evidence, Tab 5.

is fixed by statute, has apparently been expended with the reported laying off of all employees in June 2003.

{¶ 6} The sheriff further alleges, inter alia, that (1) the fleet of vehicles for the office is aged (the newest vehicles being 1998 models),[12] (2) the average mileage per vehicle is 132,023 miles,[13] (3) the vehicles lack routine maintenance and "fail to meet mileage standards for even secondary response cruisers,"[14] and (4) the sheriff's office space is too small, inadequately heated and air-conditioned, ill supplied, and dilapidated in the sense that necessary equipment has not been acquired, and outworn or damaged equipment has not been replaced or repaired.[15] The sheriff has supplied a list of necessary equipment he claims is needed, but without providing dollar amounts.[16] The board disputes these claims only by arguing that the heating system was promptly repaired when it broke down.[17]

{¶ 7} Except as stated above, the board does not generally deny most of the sheriff's specific allegations. It relies, generally, on the fact that it, and not the sheriff, is the final authority as to the sheriff's budget, and states that, because of anticipated revenue loss of $384,834.06[18] in 2003, it did not abuse its discretion by applying an across-the-board budget cut to the sheriff's office, which it alleges was actually only a 10 percent budget cut because the $200,000 the sheriff requested for operation of the jail was fully funded.[19] We agree.

## ANALYSIS

{¶ 8} To be entitled to a writ of mandamus, the sheriff must show a clear right to relief, that the board is under a clear duty to provide that relief, and that he has no plain and adequate remedy in the ordinary course of law.[20] He first argues that the board must fund his request for the reasonable and necessary expenses of his office because the constitutional "separation-of-powers" doctrine

---

12. Trussell affidavit, Table B.

13. Id., ¶ 46.

14. Id., ¶ 47.

15. Id., ¶ 51–56.

16. Id., Table C.

17. Sheets affidavit, ¶ 17(g).

18. Board's brief, at 2.

19. Id., at 13–14.

20. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 6 OBR 50, 451 N.E.2d 225.

requires it to do so. He cites much authority for this proposition. However, the authority breaks down into two categories: cases involving disputed appropriations requested by courts,[21] and cases involving disputed appropriations requested by judicial and executive offices in which a special statute conferred authority on the office, not the general appropriating authority, to determine the reasonable and necessary expenses of the office.[22] In the latter instance, the general appropriating authority has the burden of proving that the request is an abuse of discretion, i.e., is arbitrary, unreasonable, or unconscionable.[23]

## Separation of Powers

{¶ 9} In the context of budgetary disputes, the Supreme Court appears to have first invoked the separation-of-powers doctrine in *State ex rel. Foster v. Lucas Cty. Bd. of Commrs.* (1968), 16 Ohio St.2d 89, 45 O.O.2d 442, 242 N.E.2d 884, paragraphs one and two of the syllabus (although it appears that the case was resolvable, and was resolved, under a special statute that required the board of county commissioners to appropriate the funds requested by the court).[24] Nevertheless, the court subsequently invoked the constitutional doctrine in *Arbaugh, Hoose,* and *Weaver,* supra, thus establishing its viability.

---

21. *Pike v. Hoppel* (Nov. 13, 2000), Columbiana App. No. 00 CO 34, 2000 WL 1726522 (probate and juvenile court); *State ex rel. Lewis v. Perry Cty. Bd. of Commrs.* (Nov. 19, 1996), Perry App. No. 96 CA 39, 1996 WL 752807 (court of common pleas); *State ex rel. Weaver v. Lake Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d 204, 580 N.E.2d 1090 (juvenile division of court of common pleas); *State ex rel. Lake Cty. Bd. of Commrs. v. Hoose* (1991), 58 Ohio St.3d 220, 569 N.E.2d 1046; *State ex rel. Arbaugh v. Richland Cty. Bd. of Commrs.* (1984), 14 Ohio St.3d 5, 14 OBR 311, 470 N.E.2d 880 (common pleas court); and *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.* (2000), 90 Ohio St.3d 55, 734 N.E.2d 811 (probate court). Many more cases could be cited for this proposition.

22. *Cuyahoga Cty. Bd. of Mental Retardation v. Cuyahoga Cty. Bd. of Commrs.* (1975), 41 Ohio St.2d 103, 70 O.O.2d 197, 322 N.E.2d 885 (board of mental retardation); *State ex rel. Durkin v. Youngstown City Council* (1984), 9 Ohio St.3d 102, 9 OBR 382, 459 N.E.2d 213 (clerk of municipal court); *Stacey v. Halverstadt* (Oct. 23, 1987), Columbiana App. No. 87–C–30, 1987 WL 18846 (clerk of court's legal department); *Stauffer v. Miller* (1992), 79 Ohio App.3d 100, 606 N.E.2d 1037 (board of elections). See, also, *State ex rel. Binder v. Mahoning Cty. Bd. of Commrs.* (1962), 174 Ohio St. 23, 21 O.O.2d 251, 186 N.E.2d 476 (soldiers' relief commission); *Reed v. Portage Cty. Bd. of Commrs.* (1985), 30 Ohio App.3d 41, 30 OBR 95, 506 N.E.2d 249 (clerk of courts-auto title division; also holding that failure to appropriate in accordance with statute is an abuse of discretion); *State ex rel. Veterans Serv. Office of Pickaway Cty. v. Pickaway Cty. Bd. of Commrs.* (1991), 61 Ohio St.3d 461, 575 N.E.2d 206 (county veterans service commission); and *Lynch v. Gallia Cty. Bd. of Commrs.* (1997), 79 Ohio St.3d 251, 680 N.E.2d 1222 (county veterans service commission).

23. *Wilke,* supra, 90 Ohio St.3d at 60, 734 N.E.2d 811 (courts); *Lynch,* supra, 79 Ohio St.3d at 258, 680 N.E.2d 1222.

24. See *State ex rel. Cleveland Mun. Court v. Cleveland City Council* (1973), 34 Ohio St.2d 120, 125, 63 O.O.2d 199, 296 N.E.2d 544.

{¶ 10} The sheriff's office is not a court, but he argues that he should receive his full budget request under the separation-of-powers doctrine, like a court, because "[i]t cannot be contended that this rule and the policy behind it do not apply equally to disputes between the legislative and executive branch."[25] He cites no authority for this proposition, except statutes placing mandatory law-enforcement duties and judicially related duties on the sheriff's office.

{¶ 11} The Supreme Court has never, so far as we can determine, applied the separation-of-powers doctrine to disputes between the executive and legislative branches. We perceive at least one reason for this: to do so would make every state and local executive-branch office the final authority for appropriating its own budget, absent an abuse of discretion, and deprive the General Assembly and local legislative authorities of their traditional appropriation powers. We do not deny that there may be a certain inequity in carving out an exception for the judicial branch of government, but we are not prepared, in light of existing authority, to extend the doctrine to the executive branch of government in the budgetary context.

{¶ 12} Nor has the sheriff directed us to any statute making him, and not the board, the final authority for appropriations to his office. The board aptly points out that R.C. Chapter 5705 makes it the appropriating authority for county offices. The board also points out that R.C. 5705.28(C)(1) requires it to appropriate the full amount only for offices that "may fix the amount of revenue they are to receive." Thus, the general budgeting statutes recognize the judicially created and statutory exceptions to the board's general appropriating authority. Since the sheriff's office is not one of those exceptions, his argument fails on this point. The board has the final authority to determine the sheriff's budget, absent an abuse of its discretion.

{¶ 13} Thus, we also deny the sheriff's assertion that the board has an affirmative duty to fully fund all mandatory duties of all county offices before funding nonmandatory duties. Absent a constitutional provision or statute requiring full funding, an appropriating authority has discretion over how to fund all budgetary requests.[26]

### Abuse of Discretion

{¶ 14} The sheriff also contends that the board abused its discretion by failing to fully appropriate the funds he requested to operate his office, with

---

25. Sheriff's brief, at 12.

26. See *State ex rel. Cleveland Mun. Court v. Cleveland City Council* (1973), 34 Ohio St.2d 120, 125, 63 O.O.2d 199, 296 N.E.2d 544.

respect to both his mandatory and nonmandatory duties. To prevail, the sheriff must establish that the requested funding was reasonable and necessary and that the board arbitrarily, unreasonably, or unconscionably refused to appropriate that amount. The burden of proof to establish this claim is on the sheriff. *Veterans Serv. Office,* supra, 61 Ohio St.3d at 463, 575 N.E.2d 206. Concerning nonmandatory duties, the sheriff argues that "[u]nlike the situation with funding of mandatory duties, the burden of proving an abuse of discretion by a preponderance is on the party challenging the appropriation" (Brief, at 21.) For this assertion, he cites *Whitman v. Magee* (Dec. 18, 1987), Trumbull App. No. 3938, 1987 WL 47774. The citation implies a shifting of the burden of proof to the board in this case, since it is opposing the full appropriation. However, *Whitman* does not require a shifting of the burden of proof. In that case, the clerk of courts sought a writ of mandamus to compel the board of county commissioners to fully fund her budget request. The trial court found that the board had abused its discretion in failing to make the appropriation and allowed the writ. Concerning the clerk's judicially *and* nonjudicially related duties, the court of appeals held that the clerk had the burden of proof to establish an abuse of discretion, which she successfully carried. The only burden shifting that occurred was that the court held that on appeal the board had the burden of demonstrating that the trial court had erred. Here, we are the trial court. Thus, there is no shifting of the burden of proof.

{¶ 15} The Supreme Court has held that an abuse of discretion in budgetary matters means, as in other areas of law, that the action "implies an unreasonable, arbitrary, or unconscionable attitude." *Wilke,* supra, 90 Ohio St.3d at 61, 734 N.E.2d 811. In support of his argument, the sheriff argues that his office has been underfunded since at least fiscal year 2000, that it is and has been understaffed and ill-equipped, that the amount by which appropriations fell below requests for the current fiscal year exceeds prior years, and that the board acted arbitrarily in meeting the anticipated reduction in revenues by simply cutting funding across the board without regard to the historic underfunding of his office.

{¶ 16} Additionally, the sheriff compares budgetary records from Hocking, Jackson, Morgan, Perry, and Vinton Counties for fiscal years 2002 and 2003, which reflect a much higher funding level. However, without detailed economic and demographic details to support these comparisons, we give little credence to them.

{¶ 17} The sheriff cites two common pleas court decisions that support his arguments: *Abdalla v. Krupinski* (Aug 31, 1995), Jefferson C.P. No. 95CV242; and *Geauga Cty. Bd. of Commrs. v. Geauga Cty. Sheriff* (Nov. 14, 2002), Geauga C.P. No. 01M–001001. In each case, the court found that the board of county

commissioners abused its discretion by failing to fund at least major portions of the county sheriff's requested budget.

{¶ 18} In *Abdalla*, the sheriff sought an injunction and a writ of mandamus for his requested appropriations. The court granted a permanent injunction, prohibiting the board from "denying funding to plaintiff or otherwise interfering with plaintiff in the execution of his duties as sheriff." We accord little weight to the decision because it recites no facts to support the conclusory assertion that "[t]he budget request submitted in good faith by plaintiff to defendants represents reasonable and necessary expenditures for operation of the Jefferson County Sheriff's Department for the year 1995." Moreover, that court misallocated the burden of proof, holding that the board "failed to prove the funds requested by Plaintiff are unreasonable and unnecessary" and that "it is the duty of defendants to levy taxes and to provide funding in amounts which will allow plaintiff to fulfill his statutory obligations as sheriff." We do not believe either of these statements describes the appropriate law in such cases.

{¶ 19} *Geauga Cty. Bd. of Commrs.* is more informative, but not persuasive. The case began when the board of county commissioners sought a declaratory judgment to compel the sheriff "to operate his office within the appropriations made for it." The sheriff filed a counterclaim for declaratory judgment and a writ of mandamus to compel the board to appropriate requested funds. The case involved funding for fiscal years 2001, 2002, and 2003, and took over one year to resolve. In the end, the court allowed a writ of mandamus granting, in part, the sheriff's requested funding. The court determined for each line item whether the requested amount was reasonable and necessary. In doing so, the court apparently considered financial hardship.

{¶ 20} First, the court noted that "the high priority that is to be given components of the justice system—a primary responsibility of government, including the sheriff—can be found in the extension of these principles to other offices directly related to the administration of justice. See, for example, *Reed v. Portage Cty. Bd. of Commrs.* (1985), 30 Ohio App.3d 41, 30 OBR 95, 506 N.E.2d 249, where the court of appeals having jurisdiction over this court held that the commissioners abused their discretion when they appropriated an insufficient amount for salaries for the clerk of courts in the auto title department and affirmed the trial court grant of an extraordinary writ of mandamus."

{¶ 21} Then, the court found, as do we here, that no specific statute required the board to appropriate funds for the sheriff, except as stated in the general appropriating authority of R.C. Chapter 5705. Nevertheless, the court found an abuse of discretion: "Notwithstanding protestation of communication and consultation in the progressive budget process leading to the annual appropriation, the county commissioners' failure to account for the increased budgetary needs of the

sheriff, their 'across the board' reliance upon history in a system of proportionate appropriation practice, represents a failure to act reasonably in the exercise of their admitted discretion. That the commissioners did not attend to, and in some cases were totally unaware of, the specific requests and justification of the sheriff, amounts to a failure to exercise 'discretion' as that term is intended in the law. (In the 2001 process, the commissioners' failure to attend to the nuances of the delicate negotiations between the sheriff and the union, OBPA, was an equal want or abuse of discretion.) Failure to consider the evidence of need is a failure to exercise discretion at all, or, at a minimum an abuse of discretion. Under the circumstances extant, including revenue constriction, a process of zero budgeting, or some modification thereof, should have been employed. Their failure, and the consistent failure of each of the parties to effectively negotiate a resolution of their differences, justifies judicial incursion and equitable relief, at least for the years 2002 and the process to date for 2003."

{¶ 22} We do not adopt the court's reasoning. Although the court of appeals in *Reed* did state that the board abused its discretion by not appropriating the full amount the clerk requested for operation of the auto-title department, the decision was clearly based on R.C. 2303.29(B), which required the board to appropriate "an amount sufficient for the prompt discharge of the clerk's duties under Chapter 4505. of the Revised Code." There is no comparable statute involved in this case.

{¶ 23} Moreover, we do not adopt the court's reasoning that "a process of zero budgeting, or some modification thereof, should have been employed." Mandating the precise form of budgetary negotiations is, we believe, an unauthorized and unwise judicial incursion into the budgetary process. The issue is whether the board's action in making across-the-board reductions was "unreasonable, arbitrary, or unconscionable," *Wilke*, supra, not whether some better approach might have been employed. We hold that across-the-board budget cutting in the face of declining revenues is not unreasonable, arbitrary, or unconscionable per se, or under the facts of this case.

{¶ 24} Nor do we find that the board abused its discretion because it was unaware of the sheriff's claimed understaffing and for equipment needs. Those claims appear to have been reflected in the sheriff's 2003 budgetary requests.[27]

{¶ 25} Likewise, we find no abuse of discretion in the board's allocating $200,000 of the sheriff's appropriation to jail expenses and transferring "over $64,000" from his 2003 appropriation to cover 2002 expenditures for which no

---

27. Trussell affidavit, ¶ 16 and 27.

appropriation was made. As the sheriff himself points out, the board is under various mandates to provide adequate jail conditions.[28] Moreover, the sheriff does not maintain that either of these allocations of funds is unlawful. Rather, he states that they effectively reduced his 2003 operating budget to $271,179, which "would only be sufficient to maintain an office with one deputy and one dispatcher for each of the three shifts for the entire year, without providing for any operating expenses for those employees."[29]

{¶ 26} We believe that the board was faced with a hard choice between equally desirable allocations of funds here, given the conditions of financial hardship created by the anticipated revenue reduction of approximately $385,000. We cannot say that the choice it made was an abuse of discretion. Under the statutes, it was the board's choice to make, and if its choice necessitated curtailment of services, the sheriff's office, like other county agencies, had to make that curtailment.[30]

{¶ 27} The sheriff argues that financial hardship may not be considered when a legislative authority has a duty to provide funding requested, even if no unappropriated funds remain.[31] We find two flaws with this argument. First, as we have stated, there is no mandatory duty to provide the sheriff's requested funding. Second, the Supreme Court has stated that financial hardship may be considered, even in cases involving courts or special statutes under which an office determines its own appropriations.[32] We deem financial hardship particularly relevant when an abuse of discretion is at issue.

{¶ 28} Finally, we reject the board's assertion that the issues presented are political questions over which this court has no jurisdiction. Our jurisdiction in mandamus is mandatory under Section 3(B)(1) of Article IV of the Ohio Constitution. Moreover, all of the cited cases, and many more, demonstrate that the courts, however reluctantly, have accepted jurisdiction in mandamus over budgetary matters. It is far too late in the day for this court to decide otherwise.

---

28. Id., ¶ 61–72.

29. Id., ¶ 28.

30. See *State ex rel. Concord Twp. Bd. of Trustees v. Cunningham* (Sept. 16, 1988), Lake App. No. 12–198, 1988 WL 96632, appeal dismissed, (1989) 41 Ohio St.3d 703, 534 N.E.2d 1202; and *Lorain Cty. Deputies Assn. v. Varsi* (Dec. 16, 1992), Lorain App. No. 91CV107692.

31. See *Foster*, supra, 16 Ohio St.2d at 91, 45 O.O.2d 442, 242 N.E.2d 884.

32. See *Durkin*, supra, 9 Ohio St.3d at 134, 9 OBR 382, 459 N.E.2d 213.

{¶ 29} For the foregoing reasons, we find that the sheriff has not shown a clear right to the funding he requested for the 2002 and 2003 fiscal years or a clear duty of the board to provide such funding. Therefore, the writ is DENIED.

Writ denied.

PETER B. ABELE, J., concurs.

HARSHA, J., concurs separately.

KLINE, J., dissents.

HARSHA, Judge, concurring.

{¶ 30} The issue we face is whether the board of county commissioners abused its discretion by failing to fully appropriate a nonjudicial officeholder's budget request when the county faces a shortfall on its general revenue fund. In order to answer this question, we must keep in mind that the burden of proof is on the officeholder to show both that the requested amount was "reasonable and necessary" and that the board acted arbitrarily, unreasonably, or unconscionably in rejecting the request. See *State ex rel. Veterans Serv. Office v. Pickaway Cty. Bd. of Commrs.* (1991), 61 Ohio St.3d 461, 463, 575 N.E.2d 206.

{¶ 31} In addition to the reasoning in the principal opinion, I base my conclusion that the sheriff did not carry his burden of proof on the general concept that courts should rarely interject themselves into the essence of politics, i.e., the allocation of scarce resources.

{¶ 32} Under R.C. 5705.01(C) and 5705.38(A), the legislature has charged the board with the statutory duty of allocating scarce financial resources among competing county offices. In order to accomplish this difficult task, the board is vested with considerable discretion, for it must prioritize the demand for funds and allocate them so that each county office can perform its statutory duty within the limits of the resources available. R.C. 5705.38(C) and 5705.39. In order to do this, the board must obviously consider the request of each office in the context of total demand for county resources.

{¶ 33} Courts are ill suited to make an isolated decision as to what level an individual county office should be funded. Moreover, courts are not the best mechanism to determine how much money must effectively be taken from other county offices, thus potentially rendering those offices unable to perform their statutory duties, in order to give priority to one county office.

{¶ 34} Keeping in mind the sheriff's burden, I cannot say that the board acted unreasonably. Implicit in that conclusion is a finding that the sheriff's request was reasonable and necessary. However, given the financial condition of the county, the board did not abuse its discretion. In this context, the board may use

claims of undue hardship or impossibility to bolster its argument that it acted reasonably. See *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 43. The sheriff has presented no evidence to establish that full funding of his request would still allow the board to fund the other county offices at a level that would allow them to perform their statutory duties. Nor did the sheriff establish that the board was arbitrarily treating other offices in an unreasonably more generous manner despite the economic hard times. Finally, there is very little evidence to suggest that the sheriff sought to transfer funding from "nonessential" line items to those providing directly for peacekeeping and law enforcement. Absent such evidence, I am reluctant to interject a court's set of priorities for that of the local legislative authority.

{¶ 35} In the final analysis, the voters of Meigs County will decide whether they prefer the board's priorities to those of the sheriff.

{¶ 36} Thus, I concur in denying the writ.

KLINE, Judge, dissenting.

{¶ 37} While I agree with the majority opinion that the board of county commissioners is the final appropriating authority for the sheriff's office and that the sheriff is not entitled to set his own levels of appropriations, I would find that the board abused its discretion by failing to provide sufficient funding in 2003 to maintain the sheriff's office at even an admittedly understaffed level, and would grant a limited writ of mandamus.

{¶ 38} The sheriff has presented historical evidence of severe underfunding of his budgetary requests for staff and equipment. While revenues available for appropriation in 2003 are expected to decline from the 2002 level by about 11.4 percent, appropriations for operation of the sheriff's office declined by about 25 percent, and appropriations for employee salaries, other than those of the sheriff, declined by about 32.6 percent from 2002 levels. See Table 1.

Table 1

| Year [33] | Total Appropriation [34] | Sheriff's Appropriation | Salary Appropriation |
|---|---|---|---|
| 2000 | $ 3,907,254.57 | $716,239.09 | $389,842.01 |
| 2001 | 3,814,976.30 | 667,483.32 | 420,375.89 |
| 2002 | 3,848,128.42 | 651,963.62 | 408,741.38 |
| 2003 | 3,462,294.36 [35] | 537,188.71 | 262,658.50 |

33. Board's evidence, tabs 2, 3, 4, and 5.

34. Affidavit of County Commissioner Jim Sheets, ¶ 6; board's evidence, Tab 1. Apparently, all available revenues were appropriated for the years in question.

35. Anticipated revenue, Sheet's affidavit, ¶ 10.

{¶ 39} For 2002, the sheriff alleges that he requested $738,384.50 to operate his office.[36] This represented a request of 10.6 percent more than he received in 2001, but only 3 percent more than he received in 2000. Instead, despite slightly increased revenues, the board reduced the sheriff's appropriation to $651,963.62, only 88.3 percent of the amount requested, 2.3 percent less than received in 2001, and 9 percent less than received in 2000. As a result, the sheriff states that in October 2002, he was forced to lay off 11 of 19 employees, close his office from 2:00 a.m. to 6:00 a.m. each weeknight and all day Sunday, that he was "otherwise prevented from meeting my mandatory and day-to-day responsibilities," and that the necessary expenses of his office exceeded the appropriation by "approximately $140,000."[37]

{¶ 40} In 2003, the sheriff requested a total appropriation of $867,341.50,[38] 33 percent more than he received in 2002, and 21 percent more than he had received in 2000, the year of the highest appropriation to the office for which evidence is submitted. The board appropriated $537,188.71, 62 percent of the amount requested, 17.6 percent less than in 2002, and 24 percent less than in 2000. However, the sheriff alleges that his true operating budget is only $271,179 in 2003 "due, in part, to the * * * [board's] encumbering $200,000 of the net appropriation for prisoner housing, medical care and meals and charging over $64,000 in 2002 expenditures to my 2003 budget." [39]

{¶ 41} With regard to specific areas of the budget, as the majority opinion indicates, the sheriff alleges that his office is severely understaffed and ill equipped. The board does not substantially dispute these claims. It merely argues that, because of anticipated revenue loss, it did not abuse its discretion by applying an across-the-board budget cut to the sheriff's office, treating the sheriff's office and other county offices alike, despite evidence of understaffing and equipment (especially vehicle) problems in the department.

{¶ 42} Regarding staffing, the evidence submitted for 2003 demonstrates that the sheriff requested $468,000 for salaries, and the board appropriated only $262,658.50, or 56.1 percent of requested funding and 64.3 percent of what was appropriated for salaries in 2002. Indeed, the difference between the 2002 and 2003 appropriations for the sheriff's employees—$146,082.88—represents 37.86 percent of the entire anticipated revenue loss in 2003 from 2002 tax revenues.

36.  Sheriff's evidence, tab 1, affidavit of Sheriff Ralph E. Trussell, ¶ 16.

37.  Trussell affidavit, ¶ 19 and 25.

38.  Exhibit A, attached to second amended complaint.

39.  Trussell affidavit, ¶ 28.

{¶ 43} While I do not believe that an across-the-board budget cut is unreasonable per se, like the court in *Geauga Cty.*, supra, I believe that it is necessary to give individual attention to critical matters deserving individual attention. I believe that the steady decline in funding of the sheriff's office and the growing understaffing and increase in equipment and services needs should have alerted the board to a situation that now is out of control. Instead of responding, the board simply made deeper cuts in 2003, especially to salaries. Accordingly, I would find that the sheriff has proved that, at a minimum, his salary requests for actual employees and amounts requested for employee training and vehicle repair and maintenance for 2003 are reasonable and necessary, and would allow a writ of mandamus, limited as follows.

{¶ 44} I would find that, in view of the prevailing fiscal conditions in Meigs County, the board has abused its discretion with regard only to the funding of salaries for actual employees in 2003, and would order the board to provide funding only for the actual staff listed in the second column of Table A, attached to the Trussell affidavit, from the effective date of this decision and judgment entry for the balance of 2003. This order would apply to line item A006A02 in the 2003 appropriation report.

{¶ 45} With regard to equipment and supplies and training in the 2003 appropriation, I would find from the undisputed evidence that the following line-item requests are reasonable and necessary and would issue a writ of mandamus ordering the board to fully fund the sheriff's requests: (1) line item A306A03 (tires), (2) line item A106A05 (gas and oil), prorated from the date this decision and judgment entry is filed until the end of the fiscal year, and (3) line item A006A07 (training school).

{¶ 46} Regarding all other 2003 line items, I cannot determine from the evidence submitted whether the amounts requested were reasonable and necessary or that the board abused its discretion with regard to the amounts appropriated.

{¶ 47} I would make no order as to the relief requested for 2002 because the evidence does not clearly indicate the amount or nature of the expenditures.

{¶ 48} For the foregoing reasons, I respectfully dissent.