[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Beavercreek Twp. Fiscal Officer v. Graff,* Slip Opinion No. 2018-Ohio-3749.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3749

THE STATE EX REL. BEAVERCREEK TOWNSHIP FISCAL OFFICER *v.* GRAFF ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Beavercreek Twp. Fiscal Officer v. Graff,* Slip Opinion No. 2018-Ohio-3749.]

*Mandamus—R.C. 507.021(A) unambiguously requires township fiscal officer to obtain board of township trustees' approval for salary offered to assistants hired under R.C. 507.021(A)—Fiscal officer failed to show board abused its discretion in rejecting her salary proposals—Board exceeded its authority under R.C. 507.021(A) in setting the assistants' salaries—Writ granted in part and denied in part.*

(No. 2016-0747—Submitted January 23, 2018—Decided September 20, 2018.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this original action, relator, Beavercreek Township Fiscal Officer Christy L. Ahrens, seeks a writ of mandamus to compel respondents, the Board of Beavercreek Township Trustees and its members, Carol Graff, Jeffrey Roberts, and Thomas Kretz (collectively, "the board"), to approve and fund the salaries of two positions in the fiscal office in the amount she proposed.

{¶ 2} We conclude that R.C. 507.021(A) authorizes Ahrens to hire two assistants to the fiscal officer and to set compensation for those positions, subject to prior approval by the board. But because she has not demonstrated that the board abused its discretion when it denied her specific salary requests, we deny her request for a writ of mandamus compelling the board to approve and fund the two assistant positions at the specific salaries that she proposed. In addition, we conclude that the board exceeded its authority when it adopted Resolutions 2016-158 and 2016-159 setting the annual salaries for the two assistants to the fiscal officer. Accordingly, we issue a writ of mandamus ordering the board to rescind Resolutions 2016-158 and 2016-159 and to consider a new compensation proposal submitted by Ahrens.

## Background

{¶ 3} Ahrens has been the fiscal officer for Beavercreek Township since 2006. In 2006, the board hired Deb White as a full-time accounts-payable/payroll technician. White reported to the assistant to the fiscal officer. According to the job description submitted as evidence, her basic responsibilities included record-keeping; reviewing the purchasing process "for proper account distribution, outdated purchase orders and reconciliation of vendor invoices;" and "[d]ocument[ing] and updat[ing] accounts payable procedures and accounting manuals." White's annual salary was $53,872 in 2014 and $55,494.40 in 2015. An annual salary of $57,158.40 was originally budgeted for 2016.

2

{¶ 4} In 2007, Ahrens appointed James Barone to the full-time position of assistant to the fiscal officer. Barone reported to Ahrens and, according to the job description submitted as evidence, was involved in "planning, organizing, coordinating and directing [the] activities of the Office of [the] Fiscal Officer," and in addition to other duties, he was "[r]esponsible for monitoring, preparing, and posting all revenues; monitoring all fixed assets (purchasing, transfers, and disposal); and * * * preparing and filing financial statements and reports (monthly, quarterly, and yearly)." In 2014, Barone's annual salary was $76,507.60.

{¶ 5} On November 14, 2014, Kretz and the township administrator, J. Alexander Zaharieff, met with Ahrens to discuss the creation of a township finance department that would be led by a finance director, who would report to the township administrator rather than to the fiscal officer. According to Ahrens, Kretz informed her that Barone would be hired as the finance director at the same salary and with the same responsibilities as he currently had as her assistant and that if she did not agree to the change, the board could defund the position of assistant to the fiscal officer. (Kretz denies threatening to defund the assistant position.) The board discussed its power to fund and defund positions at a March 9, 2015 special meeting.

{¶ 6} On March 16, 2015, the board created a finance department—whose employees would report to the township administrator—and it approved the proposed job description for the finance-director position. The board also approved a new township organizational structure that gave the township administrator supervising authority over the accounts-payable/payroll technician, thus eliminating the fiscal officer's supervising authority.

{¶ 7} On March 30, 2015, the board appointed Barone the finance director at the same salary he was making as assistant to the fiscal officer, $78,080.88. Barone's 2016 salary was budgeted at $81,167.06.

**{¶ 8}** R.C. 507.021(A) authorizes a fiscal officer to "hire and appoint one or more persons as the fiscal officer finds necessary to provide assistance to the township fiscal officer or deputy fiscal officer" and to "set the compensation of those persons subject to the prior approval of the board of township trustees." On February 12, 2016, Ahrens's attorney contacted the board's attorney with a proposal to hire two assistants to the fiscal officer pursuant to R.C. 507.021(A). The first assistant to the fiscal officer would earn an annual salary between $75,000 and $92,000 (the parties herein refer to this position as the "lead assistant" position). The second assistant to the fiscal officer would earn an annual salary between $50,000 and $65,000 (the parties herein refer to this position as the accounts-payable/payroll-assistant position). The lead assistant would report directly to the fiscal officer, and the accounts payable/payroll assistant would report to the lead assistant. According to Ahrens's attorney, the lead assistant would perform the duties "formerly performed by the assistant to the fiscal officer position, prior to the creation of the finance director position" and the accounts-payable/payroll assistant would perform "most of the duties" of the accounts-payable/payroll-technician position.

**{¶ 9}** On March 28, 2016, the board discussed Ahrens's proposal and adopted four resolutions:

(1) Resolution 2016-160 eliminated the position of finance director, effective May 9, 2016.

(2) Resolution 2016-161 eliminated the position of accounts-payable/payroll technician under the finance director and township administrator, effective May 9, 2016.

(3) Resolution 2016-158 authorized the lead-assistant position at an annual salary of $40,515.

(4) Resolution 2016-159 authorized the position of accounts-payable/payroll assistant under the fiscal officer at an annual salary of $28,200.

4

In May 2016, the board approved a $5,000 salary increase for each of the new positions.

{¶ 10} Ahrens alleges that under R.C. 507.021(A), the board must approve the fiscal officer's proposed compensation for her assistants and allocate the necessary funds absent an abuse of discretion by the fiscal officer. Ahrens requests a writ of mandamus directing the board to approve and fund the proposed salaries for the lead-assistant and accounts-payable/payroll-assistant positions.

### Analysis

{¶ 11} To be entitled to a writ of mandamus, Ahrens must establish (1) a clear legal right to the requested relief, (2) a corresponding clear legal duty on the part of the board to provide it, and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Ahrens must prove her entitlement to the writ by clear and convincing evidence. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus.

{¶ 12} Ahrens's mandamus claim hinges on her authority and the board's obligation under R.C. 507.021(A).

### *R.C. 507.021(A)*

{¶ 13} The board argues in its brief that R.C. 507.021(A) grants it the "discretion to approve and appropriate amounts for the fiscal officer and, specifically, for amounts to be paid to any assistants." In its view, when a funding dispute arises, R.C. 507.021(A) places the burden on the township fiscal officer to prove that her request was reasonable and that the board of trustees abused its discretion in denying the request.

{¶ 14} By contrast, Ahrens argues that R.C. 507.021(A) gives the township fiscal officer the primary authority to set the compensation of any assistants hired under that provision. In her brief, she urges us to hold that under the current version

of R.C. 507.021(A), the "requested appropriation must be made, unless the trustees prove that the request is an abuse of discretion."

{¶ 15} When this court seeks to ascertain the meaning of a statute, the threshold question is whether it is ambiguous. *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8. "It is a cardinal rule of statutory construction that where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation." *Wingate v. Hordge*, 60 Ohio St.2d 55, 58, 396 N.E.2d 770 (1979). When a statute contains language that " 'is plain and unambiguous, and conveys a clear and definite meaning, [this court] must rely on what the General Assembly has said' * * * and give effect only to the words the legislature used, making neither additions to, nor deletions from, the statutory language." *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 11, quoting *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12.

{¶ 16} R.C. 507.021(A) is not ambiguous. It expressly grants to a township fiscal officer the authority to decide whether assistants need to be hired and if so, whom to hire for those positions. The second sentence of the statutory provision at issue grants the fiscal officer the authority to set the compensation for the assistants, "*subject to* the prior approval of the board of township trustees." (Emphasis added.) This language clearly indicates that the General Assembly intentionally constrained the fiscal officer's ability to set her own assistants' salary; it makes board approval a prerequisite to the determination of the salary of a fiscal-officer's assistant.

{¶ 17} On the other hand, the plain language also contains a limitation on the board's authority; it may either grant or withhold its approval of a fiscal officer's compensation proposal, but it may not, as it did here, withhold approval *and* set the compensation for the fiscal officer's assistants. Thus, the board lacked the authority to adopt Resolutions 2016-158 and 2016-159. Thus, we hold that R.C. 507.021(A) unambiguously requires a fiscal officer to obtain board approval for the

salary offered to any assistant hired under this section and it allows the board to either approve or deny the salary proposal. However, the board does not have authority under R.C. 507.021(A) to set the salaries for the fiscal officer's assistants.

**{¶ 18}** Ahrens points to the prior version of R.C. 507.021(A) as proof that the legislature enacted the current language to give the fiscal officer primary power over setting the salaries for fiscal-office employees. In support of her argument, she invokes the rule of statutory interpretation that provides that "[a] legislative amendment must be presumed to change the effect and operation of the law." *Lynch v. Gallia Cty. Bd. of Commrs.*, 79 Ohio St.3d 251, 257-258, 680 N.E.2d 1222 (1997). Prior to 2004, R.C. 507.021 provided that "[t]he board of township trustees may employ such number of persons as it finds necessary to provide stenographic and clerical assistance to the township clerk or deputy clerk." Am.Sub.H.B. No. 441, 133 Ohio Laws, Part II, 2193. (The term "fiscal officer" was substituted for "clerk" in 2005.) Sub.S.B. No. 107, 151 Ohio Laws, Part I, 406, 458. In 2004, the General Assembly gave the clerk (fiscal officer) the power to decide whether to hire assistants and whom to hire as assistants and also the power to *propose* the salary for those assistants, subject to approval from the board. Ahrens argues in her brief that "[i]f this change is to mean anything, then the current language of R.C. 507.021(A) places the power of setting compensation primarily with the township fiscal officer."

**{¶ 19}** But as explained above, the language of R.C. 507.021(A) is unambiguous. Indeed, Ahrens's interpretation of R.C. 507.021(A) would render the phrase "subject to the prior approval of the board of township trustees" meaningless and thus fails to give effect to the words the legislature used. *See Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 19 (When interpreting statutes, "[c]ourts may not delete words used or insert words not used"). The effect of the legislative change was clearly to give the fiscal officer *some* authority over her own budget, but in order to hold that she

has exclusive authority to set compensation, we would need to disregard the unambiguous statutory language, which we will not do. R.C. 507.021(A) requires the fiscal officer to obtain the board's approval before she sets the compensation for her assistants. .

{¶ 20} Because the statute does not grant the fiscal officer exclusive authority to set the compensation of her assistants, mandamus cannot be used to compel the board to approve her compensation request absent a showing that the board abused its discretion in denying the request. *State ex rel. Veterans Serv. Office of Pickaway Cty. v. Pickaway Cty. Bd. of Commrs.*, 61 Ohio St.3d 461, 463, 575 N.E.2d 206 (1991). In *Veterans Serv. Office*, a county veterans-service commission sought a writ of mandamus to compel a board of county commissioners to appropriate the full amount it requested. In denying the writ, we noted that the relevant statute provided for "review and revision" by the board of the commission's budget request and held that the commission was not automatically entitled to its full request and that it could not compel the board to grant the request absent a showing that its denial was an abuse of discretion. *Id.* at 462-463.

{¶ 21} Because R.C. 507.021(A) calls for the prior approval of the board of township trustees, we reach a conclusion here analogous to the conclusion in *Veterans Serv. Office*: the board's decision whether to approve or reject the fiscal officer's compensation proposal is entitled to a presumption of reasonableness. In other words, R.C. 507.021(A) grants the fiscal officer the authority to propose to the board the compensation her assistants should receive, but if the board rejects that proposal, the burden is on the fiscal officer to show that the board abused its discretion in denying her request. *See also State ex rel. Trussell v. Meigs Cty. Bd. of Commrs.*, 155 Ohio App.3d 230, 2003-Ohio-6084, 800 N.E.2d 381 (4th Dist.) (statute does not grant sheriff final authority for appropriations to his office and therefore he is not entitled to a writ of mandamus to compel the board of

commissioners to approve his full budget request absent a demonstration that the board abused its discretion in denying the request).

{¶ 22} Accordingly, to be entitled to the requested writ of mandamus, Ahrens must demonstrate, by clear and convincing evidence, that the board abused its discretion when it rejected her compensation proposal.

*Abuse of discretion*

{¶ 23} To demonstrate an abuse of discretion, Ahrens must show that the board acted arbitrarily, unreasonably, or unconscionably in rejecting the compensation request. *See State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.*, 90 Ohio St.3d 55, 61, 734 N.E.2d 811 (2000) (" 'abuse of discretion' implies an unreasonable, arbitrary, or unconscionable attitude").

{¶ 24} Ahrens contends in her reply brief that the board used "bad math" in rejecting her proposal and awarding lower salaries for the two assistant positions. She criticizes the survey that was submitted as evidence by the board in support of its rejection of her proposal. The survey shows the salaries paid to persons in similar positions in other Ohio townships, and it indicates various factors related to each position, including the title of the position, whether the position is full-time or part-time, the hourly rate/annual salary of the position, the population of the township, the 2013 general-fund revenues of the township, and the 2013 total revenues of the township. The survey indicated an average annual salary of $39,801.82 for positions similar to the lead-assistant position and an average annual salary of $29,322.80 for positions similar to the accounts-payable/payroll-assistant position. The board also compared and took into account the job descriptions for the new lead-assistant and accounts-payable/payroll-assistant positions that it created versus the job descriptions provided by many of the surveyed counties.

{¶ 25} Ahrens argues that the salary survey was flawed because it included both full-time and part-time positions, resulting in a lower average salary. She also argues that the survey included positions that were more comparable to the

accounts-payable/payroll-assistant position in determining the average salary for the lead-assistant position. To illustrate her point, Ahrens points to the job description for the position of "fiscal analyst II" in Sylvania Township that was included in the survey. There is a handwritten notation at the top of the page that reads, "Comparable to: Account Payable $17.18 hr. 10 yr. service." In addition, the salary survey for the accounts-payable/payroll-assistant position includes 20 allegedly comparable positions, only seven of which are full-time positions. Because the board approved two *full-time* positions, the fact that it relied on data from part-time positions in other counties does detract from the weight of that evidence.

{¶ 26} Yet despite the shortcomings of the survey, Ahrens has not produced evidence to demonstrate that the board abused its discretion. In fact, the survey of comparable township positions that she submitted as evidence is not without fault. Referring to her survey, Ahrens contends that the salary ranges she proposed for the lead-assistant and accounts-payable/payroll-assistant positions were "in line with * * * similar positions with other nearby townships." However, her salary survey lacks information about the townships, which is necessary to support comparison, and therefore is insufficient to satisfy her burden of proof.

{¶ 27} She further argues that the unreasonableness of the board's decision is demonstrated by the fact that "[t]he two Assistant positions are almost identical to the Finance Director and Accounts Payable/Payroll Technician positions" that were previously funded. Although there are many overlaps in the duties of the prior positions and the new assistant positions, Ahrens fails to take into account noteworthy differences. For example, the finance-director position included the duties of providing revenue forecasts and assisting the township administrator in preparing the township budget and five-year departmental financial forecasts. The lead-assistant position that Ahrens proposed does not include these duties. Because preparing the budget is a significant duty, this change supports the board's claim

that the lead-assistant position differs significantly from the finance-director position.

{¶ 28} In addition, the board acted reasonably by taking into account the township's financial condition when it considered Ahrens's proposal. The board emphasizes in its brief that it considered "the ongoing need to balance the general fund budget, and the years of the Township's general fund expenditures that exceeded the revenues and caused a reduction in carryover funds." Moreover, evidence in the record demonstrates that Ahrens publicly commented on the poor financial condition facing the township, criticizing the board as engaging in deficit spending. Therefore, it was not unreasonable or arbitrary for the board to consider the township's financial condition when reviewing Ahrens's proposed compensation for the two assistants, which, combined, would have cost the township over $100,000 in salary alone.

{¶ 29} Nor does the evidence support Ahrens's complaint that in rejecting her proposed salaries, the board was singling out her office to receive budget cuts. Ahrens argues that Trustee Graff conceded in a March 28, 2016 board meeting that the board was cutting the salaries of the fiscal-office employees in half while leaving all other office's budgets intact. But taken in context, Graff's comments do not support Ahrens's claim that no other office's budget would be cut; the only salaries at issue at the March 28th meeting were those proposed by Ahrens. Graff's comments alone do not support Ahrens's claim that the board acted arbitrarily and unreasonably in rejecting her proposed salaries.

{¶ 30} In conclusion, Ahrens has not presented clear and convincing evidence that the board abused its discretion in rejecting her proposed salaries. But we also hold that the board exceeded its authority under R.C. 507.021(A) when it set the salaries for Ahrens's assistants. Accordingly, we issue a writ of mandamus ordering the board of trustees to rescind Resolutions 2016-158 and 2016-159 and to consider a new compensation proposal from Ahrens.

Writ granted in part
and denied in part.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

DEGENARO, J., not participating.

_____

Andrew P. Pickering, Special Assistant Greene County Prosecuting Attorney, for relator.

Surdyk, Dowd & Turner Co., L.P.A. and Dawn M. Frick, for respondents.

_____